**In re Mark Allen TRIBLE, Debtor.**

**J. Michael Morris, Trustee, Plaintiff,**

v.

**Citifinancial; and Mark A. Trible, Defendants.**

**Bankruptcy No. 00–13359. Adversary No. 00–5357.**

United States Bankruptcy Court, D. Kansas.

March 12, 2003.

Tammy M. Martin, Wichita, KS, for Debtor.

J. Michael Morris, Wichita, KS, trustee.

## CORRECTED MEMORANDUM
## OPINION AND ORDER [1]

ROBERT E. NUGENT, Chief Judge.

This is an adversary proceeding brought pursuant to 11 U.S.C. § 544.[2] The trustee seeks to avoid Citifinancial's lien in the debtor's mobile home and preserve the avoided lien for the benefit of the bankruptcy estate. The central issue in this case is whether Citifinancial's security interest in the debtor's mobile home is properly perfected.[3]

The mobile home is attached to real estate owned by the debtor in Wichita, Kansas. Citifinancial claims perfection of its security interest in the mobile home and real estate (together, the "Property") by virtue of its real estate mortgage. The trustee claims Citifinancial's lien in the mobile home is unperfected because the lien is not indicated on the mobile home's certificate of title. The trustee argues that under applicable Kansas law, the *exclusive* method of perfecting a lien in a mobile home is by notation of the lien on the certificate of title.

This case was submitted to the Court upon stipulated facts and exhibits and the briefs of the parties. The Court has reviewed the parties' submissions and makes the following findings.

On August 9, 2000, the debtor executed a combined Disclosure Statement, Note and Security Agreement and a Mortgage in favor of Citifinancial. The debtor intended to grant Citifinancial a lien in the Property. The debtor was in possession of the mobile home.[4] Citifinancial holds a validly perfected real estate mortgage on the real estate. The trustee claims no interest in the real estate.

On August 29, 2000 the debtor filed his bankruptcy petition under Chapter 7. The trustee became a lien creditor on this date. *See* K.S.A. 84–9–301(3). The debtor has claimed the Property as his exempt homestead and the claimed has not been challenged. At the time of filing, the debtor owed Citifinancial $36,460.72 as evidenced by Citifinancial's proof of claim. On December 18, 2000, the trustee filed this adversary proceeding to avoid Citifinancial's lien. The trustee and the debtor entered into an Agreed Order Resolving Adversary Action on January 23, 2001. During the pendency of the adversary action, the trustee, debtor and Citifinancial entered into an Agreed Order concerning the debtor's post-petition payments on the mobile home.

The 1987 mobile home is a mobile/manufactured home as defined in the Kansas Manufactured Housing Act, K.S.A. 58–

---

1. This Opinion was previously issued on July 24, 2002 (Dkt.60) and is reissued to correct certain typographical errors. With the Supplemental Memorandum Opinion filed this date, this is the final opinion of the Court.

2. All statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq. unless otherwise specified.

3. To the extent Article 9 of the Kansas Uniform Commercial Code is applicable to the issue presented, the provisions of Article 9 as they existed in 2000—prior to the July 1, 2001 effective date of revised Article 9—govern. *See* K.S.A.2001 Supp. 84–9–701 Revisor's

Note. This adversary complaint was filed December 18, 2000, prior to the effective date of revised Article 9. *See* K.S.A.2001 Supp. 84–9–702(c). Citifinancial does not dispute that the former provisions of Article 9 govern.

4. In his opening brief, the trustee has clarified that the transaction described was actually a refinance of the mobile home and real estate, that the debtor was already in possession at the time of the refinance, having owned the property since 1990. Citifinancial does not take issue with this clarification of the facts. Accordingly, the Court will consider these statements as true.

4202(a) and (b).[5] It is not a modular home. Citifinancial did not file a notice of security interest with the Kansas Department of Revenue, Division of Vehicles. Nor is Citifinancial identified as a lienholder on the mobile home's certificate of title.

The Property is taxed as real estate. The mobile home is not separately taxed as personal property. The trustee and Citifinancial stipulated to an appraised value of $63,500 for the property. The stipulated appraisal initially submitted does not allocate the value between the land and the improvements. The Sedgwick County property data listing for the Property shows a total appraised value for 2000 of $43,070, with $10,600 (24.61%) allocated to the value of the land and $32,470 (75.39%) allocated to the value of the mobile home. There is no other evidence upon which the Court may base an allocation.

## *ANALYSIS*

### *Perfection*

At the outset, the Court observes that former Article 9 and other related statutory provisions concerning titling and perfection of liens in titled property have changed or been added since the Kansas Court of Appeals' decision in *Beneficial Finance Co. v. Schroeder,* 12 Kan.App.2d 150, 737 P.2d 52, *rev. denied* 241 Kan. 838 (1987). A review of Article 9 and the statutes in place at the time *Schroeder* was decided make clear that perfection of a security interest in a mobile home was accomplished in the same fashion as perfecting a security interest in a vehicle. At the time *Schroeder* was decided in 1987, the relevant perfection rules of Article 9 under the Kansas Uniform Commercial

Code were contained in K.S.A. 84–9–302(3)(c), which provided:

> A security interest in: ... (c) a vehicle ... subject to a statute of this state which requires indication on a certificate of title or a duplicate thereof of such security interests in such vehicle: Can be perfected *only* by presentation, for the purpose of such registration or such filing or such indication, of the documents appropriate under any such statute and tender of the required fee to or acceptance of the documents by such public official, or by the mailing or delivery by a dealer or secured party to the appropriate state agency of a notice of security interest as prescribed by K.S.A. 8–135 and amendments thereto. Such presentation and tender or acceptance or mailing or delivery, shall have the same effect under this article as filing under this article, and such perfection shall have the same effect under this article as perfection by filing under this article. [Emphasis added].

The definition of a "vehicle" under Chapter 8, Article 1 of the Kansas Statutes at the time of *Schroeder* included within its meaning a mobile home and a manufactured home. *See* K.S.A.1986 Supp. 8–126(a), (v). Accordingly, the method of perfecting a security interest in a mobile home was governed by the same statute applicable to vehicles, K.S.A.1986 Supp. 8–135(c)(5). This statute provided, in relevant part:

> Upon sale and delivery to the purchaser of every vehicle subject to a purchase money security interest as defined in K.S.A. 84–9–107 and amendments thereto, the dealer or secured party may complete a notice of security interest and when so completed, the purchaser shall

---

**5.** For ease of reference, the Court shall refer to the mobile home singly as a mobile home even though it is also a manufactured home.

Under the statute, the manner of perfection is the same for either a mobile home and a manufactured home.

execute the notice, in a form prescribed by the division, describing the vehicle and showing the name and address of the secured party and of the debtor ... The dealer or secured party may ... mail or deliver the notice of security interest ... to the division. The notice of security interest shall be retained by the division until it receives an application for a certificate of title to the vehicle and a certificate of title is issued. The certificate of title shall indicate any security interest in the vehicle.... The proper completion and timely mailing or delivery of a notice of security interest by a dealer or secured party shall perfect a security interest in the vehicle described on the date of such mailing or delivery.

The *Schroeder* court concluded, based upon the above statutory provisions and language, that K.S.A.1986 Supp. 8–135(c)(5) provided "the exclusive methods for perfecting a security interest in a mobile home." *See Schroeder,* 12 Kan.App.2d at 153, 737 P.2d 52.

Subsequent to *Schroeder,* Kansas made several legislative changes which altered the specific statutory provisions for titling a mobile home and perfecting a security interest in a mobile home, *but the titling requirements and exclusive method for perfection remained the same. (i.e.* notice of security interest delivered to the Division of Vehicles, Department of Revenue and notation of the lien on the certificate of title).

■ First, in 1991, the Kansas Manufactured Housing Act (hereafter the "KMHA"), K.S.A. 58–4201 *et seq.,* was en-

acted. The KMHA defined a mobile home, a manufactured home, and a modular home. *See* K.S.A. 58–4202(a), (b), and (c).[6] The KMHA also contained its own provisions for titling the mobile home or manufactured home and perfecting security interests in them. K.S.A. 58–4204 provides:

(a) Upon the transfer or sale of any manufactured home or mobile home by any person or dealer, the new owner thereof ... shall make application to the division [of vehicles] for the issuance of a certificate of title evidencing the new owner's ownership of such manufactured home or mobile home.... *[I]t shall state all liens or encumbrances thereon and such other information as the director may require.* Notwithstanding any other provision of this section, no certificate of title ... shall be issued for a manufactured home or mobile home having any unreleased lien or encumbrance thereon, unless the transfer of such manufactured home or mobile home has been consented to in writing by the holder of the lien or encumbrance....

(b) The director shall design a distinctive certificate of title to be issued to owners of manufactured homes and mobile homes, so as to be distinguishable from certificates of title issued to owners of vehicles. *The certificate of title shall contain a statement of any liens or encumbrances which the application discloses ...*

(d) ... The certificate of title shall be good for the life of the manufactured home or mobile home while owned or

---

**6.** The definition of both a mobile home and a manufactured home clearly contemplate that the home may be attached to land. K.S.A. 58–4202(a) and (b) include in their respective definition that the structure is "designed to be used as a dwelling, *with or without permanent*

*foundation".* In contrast, a modular home is defined as a structure "designed to be used as a dwelling on a permanent foundation". The court notes that modular homes are omitted from the titling requirements of K.S.A. 58–4204.

held by the original holder of the certificate of title.

(e) Upon sale and delivery to the purchaser of every manufactured home or mobile home subject to a purchase money security interest, as defined in K.S.A. 84–9–107, and amendments thereto, the dealer or secured party may complete a notice of security interest and, when so completed, the purchaser shall execute the notice, in a form prescribed by the director, describing the manufactured home or mobile home and showing the name and address of the secured party and of the debtor ... The notice of security interest shall be retained by the division, until it receives an application for a certificate of title to the manufactured home or mobile home and a certificate of title is issued. *The certificate of title shall indicate any security interest in the manufactured home or mobile home.... The proper completion and timely mailing or delivery of a notice of security interest by a dealer or secured party shall perfect a security interest in the vehicle described on the date of such mailing or delivery.*

[Emphasis supplied].[7] At the same time that the KMHA was enacted, the Kansas Legislature removed the terms "manufactured home" and "mobile home" from Chapter 8, Article 1 ending their treatment as vehicles. *See* 1991 Kan. Sess. Laws, ch. 33, § 13, p. 320 (amending K.S.A. 8–126(v)).

Second, in 1997, K.S.A. 84–9–302(3) was amended, adding subsection (d) to specifically address perfection of a security interest in a mobile home or manufactured home. It made clear that liens in mobile homes and manufactured homes were to be perfected "under any such statute" which required indication on a certificate of title. K.S.A.1999 Supp. 84–9–302(3)(d) provided:

A security interest in: ... (d) *a manufactured home or a mobile home ...,* subject to a statute of this state which requires indication on a certificate of title or a duplicate thereof of such security interest in such manufactured home or mobile home: *Can be perfected only by presentation, for the purpose of such registration or such filing or such indication of the documents appropriate under any such statute to the public official appropriate under any such statute and tender of the required fee to or acceptance of the documents by such public official, or by the mailing or delivery by a dealer or secured party to the appropriate state agency of a notice of security interest as prescribed by K.S.A. 8–135 and amendments thereto.* Such presentation and tender or acceptance, or mailing or delivery, shall have the same effect under this article as filing under this article, and such perfection shall have the same effect under this article as perfection by filing under this article. [Emphasis added].

In short, the legislative history of the relevant statutes demonstrates that since *Schroeder* was decided, the statutory authority or source for titling and perfecting a security interest in a mobile home has been moved from Chapter 8, dealing with vehicles, to Chapter 58, dealing with manufactured housing. The method of perfection, however, remains the same.

■ Accordingly, the Court concludes that under K.S.A. 84–9–302(3)(d) and K.S.A. 58–4204, the exclusive method for Citifinancial to have perfected its security interest in the debtor's mobile home in August of 2000 was by notice of security interest to the Division of Vehicles of the Department of Revenue and notation of its

---

7. K.S.A. 58–4204(e) parallels the provision on

vehicles found in K.S.A. 8–135(c)(5).

lien or security interest on the certificate of title for the mobile home.[8] Having failed to do so, Citifinancial's lien in the debtor's mobile home is unperfected and subject to avoidance under § 544(a).[9]

One final comment concerning the perfection issue is warranted. Although ultimately followed, the *Schroeder* decision was called into question by the court in *In re Reed*, 147 B.R. 571 (D.Kan.1992). The district court discussed the bankruptcy court's distinction between titling requirements and registration requirements and the bankruptcy court's reasoning that a certificate of title for a mobile home was not required in some instances, citing K.S.A.1989 Supp. 8–143(5). 147 B.R. at 573–75. The bankruptcy court's concern regarding K.S.A.1989 Supp. 8–143(5) has been alleviated by the 1991 amendment to K.S.A. 8–143(5) deleting the key language. *See* 1991 Kan. Sess. Laws, ch. 33, § 15, p. 337.

### Avoidance and Amount of Avoided Lien

Having determined that Citifinancial's lien in the debtor's mobile home is unperfected, the Court must now decide whether the trustee is entitled to avoid Citifinancial's lien on the mobile home, the amount of the avoided lien, and the proper apportionment between the avoided lien and the non-avoided lien (*i.e.* the real estate).

Citifinancial advances what is essentially an equitable argument for denying the trustee's requested relief. One, it would be inequitable *to the debtor* for the trustee to avoid Citifinancial's lien because it is uncertain whether preserving the lien will actually benefit the bankruptcy estate. Two, Citifinancial apparently contests the apportionment of value between the avoided lien and the non-avoided lien, suggesting that the value of its lien on the real estate is greater than that proposed under the trustee's methodology.

■ K.S.A. 84–9–301(1)(b) gives priority to the trustee, as a lien creditor, over the unperfected security interest of Citifinancial. Under § 544, Citifinancial's unperfected security interest in the mobile home is avoidable by the trustee. It makes no difference that the debtor has claimed the property exempt as his homestead. Citifinancial appears to argue that on an equitable basis, the Court should not grant the trustee's request to avoid its lien because the debtor has claimed the property exempt. Citifinancial is essentially asserting *the debtor's* exemption. This argument has been previously rejected. *See In re Noblit*, 72 F.3d 757, 758 (9th Cir.1995) (exemptions are personal to the debtor).

■ Citifinancial also argues that preserving the lien will not benefit the estate and therefore, this Court should deny the trustee's avoidance. As this Court reads § 551, upon avoidance of Citifinancial's lien in the mobile home, the lien is *automatically* preserved for the benefit of the estate. *See In re Rubia*, 257 B.R. 324, 327 (10th Cir. BAP 2001), *aff'd* 23 Fed.Appx. 968, 2001 WL 1580933 (10th Cir. Dec.12, 2001).

---

**8.** The Court agrees with the trustee's response to Citifinancial's argument that a mobile home is taxed as real estate and therefore, should be treated as real property for perfecting its lien in the mobile home. K.S.A. 79–340 on its face is limited to the treatment of mobile homes *for purposes of taxation*. K.S.A. 79–340 is simply inapplicable to a determination of the perfection issue.

**9.** The Court would further observe that even if revised Article 9 effective July 1, 2001 governed the issue of perfection of a lien in a mobile home, the Court would reach the same conclusion. *See* K.S.A.2001 Supp. 84–9–311(a)(2) and Official UCC Comment 3; 84–9–102(10), (52), (53) and (54).

The effect of avoiding and preserving a lien under § 544 and § 551 was discussed in *In re Rubia, supra.* In that case, the trustee sought to recover postpetition payments made by the debtor to the creditor.

... the fixing of [the creditor's] lien on the Ranger was avoided; and the fixing of that lien was automatically "preserved for the benefit of the estate." [citations omitted]. This interest arising under § 551 is, as argued by the Trustee, property of the estate under § 541(a)(4). [citations omitted]. However, contrary to the Trustee's position, the nature of that interest does not give the Trustee the right to collect [the creditor's] debt from the debtor postpetition. *See In re Closson,* 100 B.R. 345 (Bankr.S.D.Ohio 1989).

Rather ... [the creditor] holds an unsecured claim against the debtor's estate for the entire amount of its debt as represented by its Credit Agreement. *See* 11 U.S.C. § 502(h). Only [the creditor], not the Trustee, has the right to collect that debt. *See Closson,* 100 B.R. at 347–48; *see also C & C Co. v. Seattle First Nat'l Bank (In re Coal–X Ltd. "76"),* 103 B.R. 276, 280 (D.Utah 1986) ("By avoiding and preserving the lien, the trustee simply steps into the [secured creditor's] shoes and succeeds to the [creditor's] rights *with regard to the lien."*) (emphasis added), *aff'd in relevant part and rev'd in part,* 881 F.2d 865, 866 (10th Cir.1989); 5 *Collier on Bankruptcy* ¶ 551.02[1] (Lawrence P. King ed., 15th ed. Rev.2000) (preservation is of lien only, not other rights held by the creditor). The avoidance of the fixing of its lien merely means that [the creditor] may no longer look to the Ranger to satisfy the debt.

257 B.R. at 327.

The Panel in *Rubia* went on to conclude that, absent an agreement by the debtor to pay the postpetition payments to the trustee, the trustee had no right to collect the payments from the creditor. 257 B.R. at 329. In the instant case, an agreement between the debtor and the trustee does exist. On January 23, 2001, an Agreed Order Resolving Adversary Action as to Defendant, Mark A. Trible was entered ("Agreed Order"). Pursuant to this Agreed Order, the debtor has agreed that "[i]f the trustee avoids and preserves the lien of Citifinancial ..., the debtor shall timely pay the trustee all payments due under the lien and security agreement." Citifinancial further complains about this agreement. The trustee correctly responds that Citifinancial has no standing to complain about the agreement made by the debtor or the interpretation of that agreement. One, Citifinancial is not a party to the Agreed Order. Two, at this stage, it is premature to argue about the trustee's rights under that agreement in the event the debtor defaults in his payments. There is no evidence in the record before this Court that debtor is delinquent in his payments of the debt to Citifinancial. Moreover, Citifinancial should not be heard to complain where the debtor and trustee's agreement directly resulted from Citifinancial's failure to perfect its lien and the consequent avoidance of that lien.

In any event, Citifinancial itself has agreed to turnover postpetition payments it received by the debtor if the trustee successfully avoids and preserves the lien of Citifinancial. *See* Agreed Order Resolving Trustee's Motion to Make Payments to the Estate entered July 30, 2001. Under these circumstances, the Court is hard-pressed to see any prejudice resulting to Citifinancial.

■ The final matter before this Court is the amount of the avoided and preserved lien. After lien avoidance, the debt owed to Citifinancial is comprised of a secured

portion (real estate mortgage) and an unsecured portion (the mobile home). *In re Rubia* instructs that the value of the avoided and preserved lien is measured by the value of the mobile home, but it is limited by the amount of the debtor's debt to Citifinancial on the petition date. 257 B.R. at 328. The parties have stipulated to an appraised value of $63,500 for the property. However, the amount of the debt to Citifinancial on the petition date was $36,460.72. Accordingly, the value of the avoided lien is limited to $36,460.72.

The question then becomes what portion of this debt should be allocated to the avoided lien versus the non-avoided lien and what portion of the debtor's postpetition payments should be allocated between the mobile home (and go to the estate) and the real estate (and go to Citifinancial). The Court notes that the Agreed Order entered into by the trustee, debtor and Citifinancial regarding post-petition payments is silent on how those payments should be allocated between the mobile home and the real estate.

The trustee reasons that since the year 2000 property data listing of Sedgwick County for 6915 Childs allocates 75.39% of the total value to the value of the mobile home, the value of the avoided lien is $27,487.74 (75.39% of $36,460.72) and 75.39% of the debtor's postpetition payments should be allocated to the avoided lien and the remainder allocated to Citifinancial's lien on the real estate.

Citifinancial takes issue with the trustee's proposed apportionment, but does not suggest what a proper or acceptable allocation would be. The Court observes that the stipulated $63,500 appraised value of the property does not allocate the appraised value between the land and the mobile home. The only evidence before this Court with respect to allocation of the total value to land and improvements is the Sedgwick County property data listing. The Court notes that there is no evidence concerning how the County arrived at this apportionment. Nor did the Court find any authority bearing on how the allocation should be made.

The valuation of the estate's new lien in the mobile home should in some manner reflect what the estate would recover if it were legally permitted to enforce its lien by foreclosure. This is consistent with *Rubia's* holding that the recovery of the lien for the estate under § 551 does not give the trustee the right to collect the debt post-petition, only the right to recover the property. *In re Rubia*, 257 B.R. at 327.

Moreover, § 506(a) provides for the determination of the value of a secured creditor's collateral "in light of the purpose of the valuation and of the proposed disposition . . . of such property, and in conjunction with any hearing on such disposition . . . ." Presumably a creditor foreclosing its interest in the mobile home (but not the real estate on which it is set) would incur the expenses of severing the home from its foundation and taking it off the premises in addition to the usual costs of recovery. Citifinancial, on the other hand, would find itself left with a hole in the ground—the likely effect being that the value of its lot would be substantially diminished. This Court declines to speculate on how these factors effect the value of the severed home or the real estate.[10]

---

**10.** As noted in the Supplemental Memorandum Opinion, upon further hearing, the parties stipulated that the debtor intended to retain his homestead and to pay for same. Accordingly, the Court received evidence concerning the value of the property and its components and, according to *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997), concluded that the values were to be fixed in light of the

## Conclusion

Based upon the foregoing, the Court partially grants the relief sought by trustee in his complaint. Specifically, the Court concludes that under Kansas law, the exclusive method for perfecting a security interest in a mobile home is by notation of the lien on the certificate of title. Citifinancial failed to properly perfect its security interest in the debtor's mobile home and is therefore unperfected. Pursuant to § 544 and § 551 Citifinancial's lien in the mobile home is avoided and automatically preserved for the benefit of the estate. Finally, the Court orders that the trustee and Citifinancial present evidence concerning the relative value of the mobile home as if it had been severed from the realty and the realty itself after such hypothetical removal. The Clerk will set the remaining issues in this adversary proceeding for status conference and evidentiary hearing at the earliest convenience of this Court's calendar. Because this Memorandum does not accord complete relief on the complaint, no Judgment on Decision shall issue until the conclusion of the valuation hearing.

### SUPPLEMENTAL MEMORANDUM OPINION AS TO VALUE OF AVOIDED LIEN

This Opinion supplements the Court's Memorandum Opinion and Order dated July 24, 2002,[1] as corrected and reissued this date,[2] and should be read together with it. The issue remaining for decision is the allocation of value between Citifinancial's avoided lien on the mobile home and its non-avoided lien on the real estate as contemplated by *In re Rubia*[3] and this Court's prior Memorandum Opinion.[4] The real estate and the mobile home are referred to together herein as the "Property." As noted previously, the value to be allocated between the mobile home and the real estate is limited to the amount of Citifinancial's claim at the date of filing—$36,460.72.[5]

On February 4, 2003, the Court held an evidentiary hearing on the apportionment of value between the real property in which the Trustee claims no interest and the mobile home subject to the avoided lien. No live testimony was presented. Instead, the parties stipulated to the admission of several documentary exhibits, choosing to rely on written appraisal reports. These reports included three commissioned appraisals[6] and Sedgwick County's property data listing showing appraised values for the Property for tax years 1998, 1999, and 2000.[7] Counsel also advised the Court that the debtor has claimed the Property exempt as his homestead, that there has been no reaffirmation agreement, and that the debtor continues to make his regular payments on the indebtedness. The Court took the matter under advisement.

---

debtor's retention of the property rather than as though it were liquidated or foreclosed.

**1.** Dkt. 60.

**2.** Dkt. 77. The opinion was revised due to typographical errata.

**3.** 257 B.R. 324 (10th Cir. BAP 2001), *aff'd* 23 Fed.Appx. 968 (10th Cir.2001).

**4.** Because the debtor has continued to make regular payments on the property during the pendency of these proceedings, the Court's

decision will determine the amount of those payments that will be paid to and retained by the Trustee for the benefit of the bankruptcy estate.

**5.** *In re Rubia,* 257 B.R. at 328.

**6.** Ex. 4, Ex. 6, and Ex. A.

**7.** Ex. 5.

Because the valuation issue is dependent upon the appraisal information before it, the Court will summarize the various appraisals. The Trustee relies on an appraisal prepared for Citifinancial dated July 27, 2000 ("the Hopkins Appraisal") [8], shortly before Citifinancial made its loan to the debtor and before debtor filed bankruptcy.[9] According to the Hopkins Appraisal, the total value of the Property on a cost basis, and after depreciating the improvements by 10 percent, was $69,835. Of this cost, the land contributed value of $6,000. The depreciated value of the improvements (which included the mobile home, a detached garage, and other site improvements) was $63,335. Subtracting the value of the garage and other site improvements in which the trustee claimed no interest, the cost basis value of the mobile home alone was $58,655. After subtracting depreciation of 10%, the cost basis value of the mobile home was fixed at $53,509.50.[10] Under the Hopkins Appraisal, then, the value of the mobile home contributes 76.62% of the total cost-basis value of the Property.[11]

This percentage allocation is consistent with the Sedgwick County Appraiser's proportionate values for the land and improvements for tax purposes. According to the property data listing for tax year 2000, the improvements contributed 75.38% of the total appraised value of the Property.[12]

After this adversary proceeding was filed, the Trustee and Citifinancial each commissioned current appraisals of the Property. The Trustee's appraisal is dated January 25, 2003 ("the Kelly Appraisal") [13] and Citifinancial's appraisal is dated January 31, 2003 ("the Bannon Appraisal").[14] The Kelly Appraisal fixed a total cost basis value of the Property at $68,567. Employing a cost basis approach, Kelly valued the land at $15,000. The cost basis of the mobile home alone was $55,955 and the net value, less a depreciation rate of 33%, was $37,321.98 on a cost basis.[15] Under the Kelly Appraisal, the value of the mobile home amounts to 54.43% of the total cost-basis value of the Property.[16]

Both the Hopkins and Kelly appraisals were made by licensed appraisers and presented on the Uniform Residential Appraisal Report form ("URAR") which this Court routinely sees in its day to day work. The Bannon appraisal, however, was presented as a letter from Mr. Bannon, who is also a licensed appraiser, and three fax transmissions from mobile home dealers. No attempt to "cost out" the whole property as is customarily done on the URAR was made. In fairness, this approach is consistent with the Court's order in the Memorandum Opinion that the parties appear and present evidence concerning the "relative value of the mobile home as if it had been severed from the realty and the realty itself after such

---

**8.** Ex. 4.

**9.** Debtor executed the note and security agreement in favor of Citifinancial on August 9, 2000 (Ex. 1) and filed bankruptcy on August 29, 2000.

**10.** The Court has included the depreciated value of the gas fireplace ($720) in the total value of the mobile home. The Hopkins Appraisal valued the fireplace separately as one of the site improvements. *See* Ex. 4.

**11.** $53,509.50 ÷ $69,835 = .7662.

**12.** *See* Ex. 5 (32,470 ÷ 43,070 = .7538).

**13.** Ex. 6.

**14.** Ex. A.

**15.** *See* Ex. 6 ($55,955 × .667 = $37,321.98).

**16.** $37,321.98 ÷ $68,567 = .5443.

hypothetical removal." [17] Apparently using the data received from the three dealers, Bannon estimated the value of the Property based upon three alternative scenarios,[18] ultimately valuing the Property as a whole at $30,000 and the value of the Property minus the mobile home at $15,000, thus yielding a 50% allocation of value to the mobile home.

■ In fixing the value of the avoided lien, this Court must be guided by the Bankruptcy Code and the teachings of *Associates Commercial Corp. v. Rash*.[19] 11 U.S.C. § 506(a) directs that in determining the amount of an allowed secured claim, the court is to determine the value of the property securing the claim. Both *Rash* and the Code recognize that there will be instances, as here, where there will be only a partial interest in the property pledged as collateral.[20] Section 506 requires the Court to consider certain factors: "Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property . . . ." [21] *Rash*, in turn, states that the proposed use or disposition of the property is of "paramount importance" to the valuation question.[22]

■ Based on the record presented, the court finds that the debtor intends to retain possession and use of the Property as his primary residence. He makes regular payments on the indebtedness and as near as the Court can tell, is not in default. The value of the property to be retained should be determined as of August 29, 2000, the date of filing bankruptcy.[23] The Court previously instructed counsel to appear and present evidence concerning the value of the mobile home and real estate as if the mobile home had been severed. Nothing in the record at that time suggested that the debtor intended to retain the Property, although the debtor had claimed the mobile home as his homestead.[24] Because the parties now stipulate that the debtor intends to retain the Property, the Court believes the *Rash* valuation principles employed in determining the value of collateral to be retained in a chapter 13 plan should be applied here. Thus, the Hopkins appraisal, having been made shortly before the case was filed, is the best evidence upon which to base this determination. Buttressing this conclusion is the fact that an apportionment of values using the tax appraisal figures yields a virtually identical allocation between the Property and the mobile home (76.62% v. 75.38%). These appraisals are simply more relevant to the issue for decision than are the Kelly or Bannon offerings.

Therefore, the value of the mobile home comprises 76% of the total value of the Property. The Court concludes that the value of the avoided lien preserved for the benefit of the estate is **$27,710.15** ($36,-460.72 × 76% = $27,710.15). Citifinancial is ordered to turnover to the Trustee 76% of any payments received on its claim after

17. Dkt. 60, p. 13.

18. Ex. A.

19. 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997) (Value of secured claim in context of chapter 13 case where debtor intended to retain Kenworth tractor truck for use in freight hauling business was replacement value standard).

20. 520 U.S. at 961, 117 S.Ct. 1879.

21. 11 U.S.C. § 506(a).

22. 520 U.S. at 962, 117 S.Ct. 1879.

23. Under *Rubia*, the value of the avoided lien (*i.e.* the mobile home) is limited by the amount of Citifinancial's claim against the debtor on the petition date. 257 B.R. at 328.

24. Dkt. 51.

the date of the debtor's bankruptcy petition, and the Trustee shall be entitled to collect 76% of the scheduled payments made thereafter until the Trustee has collected the principal amount of $27,710.15. The value of Citifinancial's mortgage on the real estate shall be reduced by the sum of $27,710.15 so that its claim (secured by the debtor's real property) is secured by the remaining $8,750.57, plus interest accruing thereon until paid.

A Judgment on Decision rendering final relief as set forth in the Court's Memorandum Opinion and this Supplemental Memorandum Opinion will issue this day.

IT IS SO ORDERED.

### JUDGMENT ON DECISION

This is an adversary proceeding pursuant to 11 U.S.C. § 544 and § 551 brought by the trustee to avoid Citifinancial's lien in debtor's mobile home, to preserve the avoided lien for the benefit of the estate, and to determine the amount of the avoided lien. Citifinancial claims a lien on debtor's real estate and a mobile home situated thereon by virtue of a real estate mortgage. The trustee contends that Citifinancial's lien may be avoided because Citifinancial's lien in the mobile home is unperfected where its lien is not indicated on the mobile home's certificate of title. The trustee asserts no interest in the real estate and Citifinancial has properly perfected its lien on the real estate.

After careful consideration of the parties' submissions and as more fully explained in the Court's Corrected Memorandum Opinion and its Supplemental Memorandum Opinion issued this day, the Court enters judgment as follows:

A. That in August of 2000 the exclusive method to perfect a security interest in a mobile home was by notice of security interest to the Division of Vehicles of the Department of Revenue and notation of the lien or security interest on the certificate of title for the mobile home as set forth in KAN. STAT. ANN. § 84–9–302(3)(d) (1999 Supp.) and KAN. STAT. ANN. § 58–4204 (1994);

B. That Citifinancial failed to properly perfect its security interest in debtor's mobile home, that Citifinancial's lien is unperfected, and that Citifinancial's lien is therefore avoided by the trustee;

C. That the avoided lien in the mobile home is automatically preserved for the benefit of the estate under 11 U.S.C. § 551;

D. That under *In re Rubia*, 257 B.R. 324 (10th Cir. BAP 2001), *aff'd* 23 Fed.Appx. 968 (10th Cir.2001), the amount of the avoided lien is limited to $36,460.72—the amount of Citifinancial's claim on the date of the bankruptcy petition;

E. That the value of the mobile home comprises 76% of the value of the whole property, and therefore the amount of the avoided lien as established by the appraisal evidence and in accordance with 11 U.S.C. § 506(a) and *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997), is fixed at $27,710.15;

F. That Citifinancial is ordered to turnover to the trustee 76% of any payments received on its claim after the date of the debtor's bankruptcy petition and the trustee shall thereafter collect 76% of the scheduled payments made by debtor until the trustee has collected the principal sum of $27,710.15; and

G. That Citifinancial's claim is properly secured by the real estate mortgage on debtor's real property and the

value of Citifinancial's mortgage shall be reduced by the amount of the avoided lien so that its claim is secured by the real property in the amount of $8,750.57, plus interest accruing thereon until paid.

IT IS SO ORDERED.