# United States Court of Appeals
## For the First Circuit

No. 13-9002

IN RE: VIRGINIA A. TRAVERSE,

Debtor.

_____

MARK G. DEGIACOMO, Chapter 7 Trustee for the
Estate of Virginia A. Traverse,

Appellee,

v.

VIRGINIA A. TRAVERSE,

Appellant.

APPEAL FROM THE BANKRUPTCY APPELLATE PANEL
FOR THE FIRST CIRCUIT

Before
Torruella, Howard, and Kayatta,
Circuit Judges.

David G. Baker for appellant.
Tara Twomey, National Consumer Bankruptcy Rights Center, and
Ray DiGuiseppe on brief for the National Association of Consumer
Bankruptcy Attorneys, Amicus Curiae.
Mark G. DeGiacomo, with whom Keri L. Wintle and Murtha Cullina
LLP were on brief, for appellee.

May 23, 2014

**HOWARD, Circuit Judge.** This case requires us to explore the contours of a bankruptcy trustee's lien avoidance and preservation powers under 11 U.S.C. §§ 544 and 551 when a debtor's state-law homestead exemption has been invoked.

In 2005, six years before filing a petition for Chapter 7 bankruptcy, Virginia Traverse secured a loan with a mortgage on her home. In the years before her bankruptcy and continuing since filing her petition, Traverse has remained current on all mortgage payments on the property. Because Traverse's home is subject to a homestead exemption under Massachusetts law, in these circumstances the Bankruptcy Code would ordinarily allow Traverse to pass through bankruptcy in possession of her home. Yet because Traverse's bank failed to record the mortgage with the appropriate registry, the bankruptcy trustee contends that his power to avoid and preserve the mortgage justifies him in selling Traverse's home as property of the bankruptcy estate. The bankruptcy judge and Bankruptcy Appellate Panel accepted the trustee's view. We reverse.

## I. Facts and Background

Virginia A. Traverse resides in a home in Lynn, Massachusetts. She has been the title owner of the property since April 30, 1999, when she recorded her ownership with the Essex County South District Registry of Deeds. On July 11, 2005, Traverse executed a mortgage on the home in favor of Washington Mutual Bank to secure a loan of $200,000. On September 25, 2008,

JP Morgan Chase acquired this mortgage as part of its blanket acquisition of Washington Mutual's assets. At no point did either mortgagee record the mortgage on Traverse's home with the Registry of Deeds. Meanwhile, in March of 2007, Traverse executed a second mortgage in favor of Citibank to secure a loan of $31,000, which Citibank recorded in due course. Traverse has kept current on her mortgage payments to both JP Morgan and Citibank.

On August 14, 2011, Traverse filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code. On her bankruptcy schedules, Traverse valued her home at $223,500.[1] She listed the remaining claim secured by JP Morgan's mortgage as $185,777.30 and the claim secured by Citibank's mortgage as $29,431.04. Finally, pursuant to the Massachusetts Homestead Act, Traverse claimed a homestead exemption in the property in the amount of $500,000. Traverse's homestead exemption, which Traverse had formally recorded in a Declaration of Homestead in January 2009, went unchallenged by any interested party.

On December 15, 2011, Mark D. DeGiacomo, acting as the Chapter 7 trustee of Traverse's bankruptcy estate, filed a complaint to avoid JP Morgan's unrecorded mortgage and to preserve it for the benefit of the estate. In response, Traverse filed a

---

[1] As of March 2012, the City of Lynn assessed Traverse's home as having a fair market value of $236,200. Because the approximate $13,000 dollar difference between these estimates does not change the legal analysis, the remainder of this opinion relies on Traverse's schedules.

counterclaim seeking a declaratory judgment that, even if he preserved the mortgage, DeGiacomo could sell only the mortgage itself and not her underlying property. Traverse argued that because the trustee's preservation of JP Morgan's mortgage gave the estate only the rights of the original mortgagee, it created no right to sell her home until she defaulted on her payments and triggered the right of foreclosure. After DeGiacomo moved for summary judgment, the bankruptcy court granted summary judgment in his favor on all counts and the Bankruptcy Appellate Panel (BAP) affirmed. Both tribunals concluded that, having preserved JP Morgan's interest in Traverse's home for the bankruptcy estate, the trustee was entitled to sell the home in order to liquidate that interest. While not disputing that Traverse's current mortgage payments prevented DeGiacomo from foreclosing on her home in his capacity as mortgagee, the bankruptcy court and the BAP concluded that DeGiacomo could nevertheless sell the home pursuant to his core powers as a trustee administering a debtor's property under the Bankruptcy Code.

Traverse now challenges that conclusion as a matter of law.

## II. Standard of Review

On appeal from the BAP, we train our analysis on the underlying bankruptcy court decision, reviewing factual findings for clear error and conclusions of law de novo. In re Canning, 706

-4-

F.3d 64, 68-69 (1st Cir. 2013).  Under the <u>de novo</u> standard, we do not defer to the bankruptcy court's ruling, but consider the matter anew as though no decision were rendered below.  <u>Id.</u> at 69. Neither do we cede any deference to the conclusions of the BAP.  <u>In re Hill</u>, 562 F.3d 29, 32 (1st Cir. 2009).

### III.  Discussion

Under § 541 of the Bankruptcy Code, all of the debtor's legal and equitable interests in property at the time of her bankruptcy petition automatically become the property of the bankruptcy estate.  11 U.S.C. § 541(a)(1); <u>In re Barroso-Herrans</u>, 524 F.3d 341, 344 (1st Cir. 2008) ("When an individual files for bankruptcy, all of his property . . . becomes property of the estate.").  Nevertheless, § 522 of the Code allows a debtor to exempt certain property, based either on an enumerated list of federal exemptions or on any alternate exemptions provided by her state.  <u>See</u> 11 U.S.C. § 522(b); <u>In re Cunningham</u>, 513 F.3d 318, 323 (1st Cir. 2008); <u>In re Hildebrandt</u>, 320 B.R. 40, 43 (B.A.P. 1st Cir. 2005).  Among the state exemptions incorporated by § 522 is the Massachusetts Homestead Act, which allows a debtor to claim an interest of up to $500,000 in a home being used by the debtor as her principal residence.  <u>In re Peirce</u>, 483 B.R. 368, 376 (Bankr. D. Mass. 2012); <u>see also</u> Mass. Gen. Laws ch. 188, § 1.  The debtor's declared homestead exemption is insulated from conveyance, sale, or levy to help satisfy the debtor's debts in bankruptcy,

with the exception of (as relevant here) a debt secured by a lien on the property, such as a mortgage. Mass. Gen. Laws ch. 188, § 3(b); In re Swift, 458 B.R. 8, 15 (Bankr. D. Mass. 2011) ("[A] debtor's homestead exemption is not effective against a mortgagee where the mortgage in question was executed before the debtor recorded a declaration of homestead."). The final working of the scheme is that, when a debtor declares a property as her homestead, proceeds realized from the sale of that property must be used first to pay off any secured claims and subsequently to satisfy the debtor's claimed exemption before, at last, being turned over to her bankruptcy estate.

A core power of a bankruptcy trustee under § 363(b) of the Code is the right to sell "property of the estate" for the benefit of a debtor's creditors. 11 U.S.C. § 363(b)(1) ("The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."). Because a debtor's exempted property interests are effectively removed from the estate, however, see Owen v. Owen, 500 U.S. 305, 308 (1991), § 363 does not empower the trustee to sell exempted interests. In re Carmichael, 439 B.R. 884, 890 (Bankr. D. Kan. 2010) ("[W]here the debtor's interest is exempted, the estate no longer has an interest that it may sell." (quoting Collier on Bankruptcy ¶ 363.08[3] (16th ed. 2012))); see also In re Parker, 142 B.R. 327, 330 (Bankr. W.D. Ark. 1992) ("The trustee

-6-

abandons property of the estate in a chapter 7 case usually because there is no equity in the property or the property is exempt."). Nor does a bankruptcy trustee ordinarily sell property solely for the benefit of secured creditors. See In re Scimeca Found., Inc., 497 B.R. 753, 781 (Bankr. E.D. Pa. 2013) ("[A] bankruptcy trustee should not liquidate fully encumbered assets, for such action yields no benefit to unsecured creditors."); Collier on Bankruptcy ¶ 725.01 ("It is not the proper function of the trustee to liquidate property solely for the benefit of secured creditors.").[2] Consequently, where a debtor claims a homestead exemption in her home, a trustee will typically sell the home only where its value exceeds both the mortgage liens on the property and the debtor's homestead exemption. In re Ellerstein, 105 B.R. 214, 216 (Bankr. W.D.N.Y. 1989) ("[Where] [t]he debtors' interest is subject to a mortgage . . . and the debtors' equity is significantly more than the amount of the homestead exemption . . . the trustee would sell the property . . . ."); In re Early, Bankr. No. 05-01354, 2008 WL 2569408, at *3 (Bankr. D.D.C. June 23, 2008) ("[I]f the amount of the debtor's exemption was less than the value of the property, . . . a trustee is free to sell the property," so long as

---

[2] The U.S. Department of Justice instructs that, "[g]enerally, a trustee should not sell property subject to a security interest unless the sale generates funds for the benefit of unsecured creditors." U.S. Department of Justice, Executive Office for United States Trustees, Handbook for Chapter 7 Trustees at 8-20 (2002).

she "distribute[s] the proceeds first to the debtor in payment of the debtor's claimed exemption . . . ."). This excess benefit for the unsecured creditors, calculated as the value of the estate minus any secured claims and exemptions, represents the bankruptcy estate's remaining "equity" in the property. In re Hyman, 123 B.R. 342, 344 (B.A.P. 9th Cir. 1991), aff'd, 967 F.2d 1316 (9th Cir. 1992) ("[T]he equity available for the estate would be any amount exceeding . . . encumbrances . . . plus the homestead exemption . . . ."); In re McKeever, 132 B.R. 996, 999 (Bankr. N.D. Ill. 1991) (defining the estate's "equity" as that "which would be left for unsecured creditors after payment of secured claims and the debtors' homestead exemption").

Where, on the other hand, a property fails to yield any remaining equity for the estate beyond the value of its secured encumbrances and the debtor's homestead exemption, a trustee generally should not sell the home, but should leave the secured creditors to their own legal means of recovering their claims. See Scimeca Found., 497 B.R. at 781 ("[I]t is appropriate for a chapter 7 bankruptcy trustee to . . . allow the secured creditors to exercise their right to recover possession of their collateral."). This is because, by definition, "[a] secured creditor can protect its own interests in the collateral subject to the security interest." U.S. Department of Justice, Executive Office for United States Trustees, Handbook for Chapter 7 Trustees at 8-20 (2002).

-8-

If a debtor defaults on her mortgage payments, the secured creditor's options include its contractual right to foreclose on the debtor's home.  If, however, a debtor continues to satisfy her contractual obligations to the benefit of the creditor, the mortgagee has no grounds to foreclose and the debtor may retain her home through the bankruptcy proceedings.  See Ellerstein, 105 B.R. at 216 ("[If] [t]he debtors' home is subject to a mortgage which is not in default and the debtors' equity is less than the properly claimed homestead exemption . . . the trustee would abandon the interest and the debtors would retain the home.").

Traverse's homestead exemption leaves no residual equity for her unsecured creditors, and her lack of default on her monthly payments precludes both Citibank and JP Morgan from foreclosing on her property.  There is consequently no dispute that, if Traverse's mortgages remained with their respective banks, the foregoing analysis would dispose of the case: the bankruptcy trustee would have no claim to sell Traverse's property and Traverse would retain possession of her home. Indeed, this appears to be the trustee's precise position with regard to Citibank's second mortgage.  In the case of JP Morgan, however, the trustee notes a further wrinkle: neither Washington Mutual nor JP Morgan perfected the first mortgage on Traverse's home by recording the lien with the Registry of Deeds.

Where a creditor has an unperfected lien on a debtor's property, the Bankruptcy Code empowers a trustee to avoid and preserve the lien for the benefit of the estate. The trustee exercises this power through two strong-arm provisions. First, the trustee's right of avoidance under 11 U.S.C. § 544 "vests the trustee with the powers of a bona fide purchaser of real property for value, and allows the trustee to invalidate unperfected security interests." In re Sullivan, 387 B.R. 353, 357 (B.A.P. 1st Cir. 2008). Second, his right of preservation under 11 U.S.C. § 551 automatically preserves the benefit of the avoided interest for the estate by "put[ting] the estate in the shoes of the creditor whose lien is avoided." In re Carvell, 222 B.R. 178, 180 (B.A.P. 1st Cir. 1998). Together, these provisions benefit the unsecured creditors by allowing the trustee to eliminate unperfected liens on a debtor's property and subsequently to apply the value represented by those liens to the general estate, bypassing any junior lienholders. See In re French, 440 F.3d 145, 154 (4th Cir. 2006) ("[T]he Code's avoidance provisions protect creditors by preserving the bankruptcy estate against illegitimate depletions."); In re Nistad, Bankr. No. 10-17453-WCH, 2012 WL 272750, at *5 (Bankr. D. Mass. Jan. 30, 2012) ("The purpose of 11 U.S.C. § 551 is to allow a trustee to preserve the avoided interest for the estate so that junior interest holders do not benefit from the avoidance to the detriment of the estate and its creditors.").

In this case, the trustee exercised his strong-arm powers to avoid and preserve JP Morgan's mortgage on Traverse's home.[3] He now argues that, by preserving the mortgage lien, he may sell the property that is subject to the lien in order to realize the value of the mortgage for the bankruptcy estate.

Before addressing the trustee's argument, it is important to clarify what the trustee does not argue. First, he does not suggest that his preservation of JP Morgan's mortgage empowers him to sell Traverse's home in his position as mortgagee. Nor could he, since Traverse correctly notes that her current payments on her mortgage insulate her property from foreclosure.[4] Rather, the

---

[3] In addition to objecting to the sale, Traverse also challenges the bankruptcy court's jurisdiction to enter a final order approving the trustee's avoidance and preservation in light of the Supreme Court's decision in Stern v. Marshall, 131 S. Ct. 2594 (2011). Traverse suggests that Stern strips the bankruptcy court of jurisdiction because the trustee's complaint seeks to augment the bankruptcy estate and depends on Massachusetts state law.

Under Stern, a bankruptcy court's jurisdiction to enter final judgments is limited by Article III to issues in bankruptcy that "stem[] from the bankruptcy itself or would necessarily be resolved in the claims allowance process." Id. at 2618. Both the trustee's complaint in this case, arising out of his § 554 and § 551 powers, and Traverse's counterclaim, disputing the bankruptcy estate's rights to her real property, stem directly from Traverse's bankruptcy filing. The bankruptcy court correctly exercised jurisdiction in entering a final order on all claims.

[4] Under 11 U.S.C. § 524(c), a debtor who remains current on her loan payments must also enter into a valid reaffirmation agreement in order to prevent a mortgagee from foreclosing on its security interest after she has filed for bankruptcy. Id.; see also In re Golladay, 391 B.R. 417, 421 (Bankr. C.D. Ill. 2008). Although the record does not reveal whether Traverse properly reaffirmed her mortgage, because the trustee makes no claims to

-11-

trustee suggests that, even in the absence of default, his preservation of the mortgage has given the bankruptcy estate an equity interest in the home that triggers his core power of sale as bankruptcy trustee.

Second, the trustee does not argue that the preserved mortgage freed up equity in Traverse's home for the bankruptcy estate by eliminating a secured debt to be satisfied before the home's value can begin accruing to unsecured creditors. Nor, again, could he do so, because Traverse's unchallenged exemption of $500,000 swallows the full $223,500 value of her home regardless of whether the sale's proceeds are first used to satisfy the $185,777.30 mortgage claim. Rather, the trustee insists that the preserved mortgage itself, as a senior lien on the home, has created equity in the home for the estate. He suggests, in short, that the preserved mortgage has turned some corresponding share of the home's value into the "property of the estate" to be liquidated through sale.

The trouble with the trustee's argument is that his preservation of an undefaulted mortgage on Traverse's home for the benefit of the bankruptcy estate is not co-extensive with an ownership right over the underlying property. Under § 551, the trustee preserves any liens or transfers avoided under § 544 by

---

Traverse's property based on his position as mortgagee we find no reason to challenge her reaffirmation in this case.

claiming those liens for the benefit of the estate, but he preserves the benefit of only that which has been avoided--in this case, the mortgage. "When the Trustee avoided the lien granted by Debtor . . . , the avoided lien and only the avoided lien became property of the estate under § 541(a)(4)." Carmichael, 439 B.R. at 890; cf. In re Haberman, 516 F.3d 1207, 1208 (2008) ("[A] bankruptcy trustee who successfully avoids a lien pursuant to 11 U.S.C. §§ 544 and 551 preserves for the bankruptcy estate the value of the avoided lien . . . ."). Preservation gives the bankruptcy estate an exclusive interest in the avoided lien, but it does not give the estate any current ownership interest in the underlying asset. See Early, 2008 WL 2569408, at *3 ("[T]he only interest recovered via avoidance is the avoided lien, not an ownership interest in the property."). As far as the trustee's § 363 powers are concerned, avoidance and preservation thus empower the trustee to sell the newly avoided mortgage as property of the estate. But if the underlying property has been exempted and withdrawn from the "property of the estate" for the purposes of § 363, the preservation of a mortgage does not resurrect the trustee's § 363 powers over that property itself. See Carmichael, 439 B.R. at 890 ("The only property interest which the Trustee may sell under § 363(b) is the estate's one-half interest in the unperfected lien . . . ."); In re Early, Bankr. No. 05-01354, 2008 WL 2073917, at *4 (Bankr. D.D.C. May 12, 2008), order amended and supplemented,

2008 WL 2569408, at *4 ("[T]he avoided lien here does not give the trustee a right to sell the debtor's interest in the Property itself.").[5]

The trustee makes much of the Supreme Court's holding in Schwab v. Reilly, in which the Court held that exemptions claimed under the Code remove only a monetary "interest" in a debtor's asset, rather than the asset itself, from the property of the bankruptcy estate. 560 U.S. 770, 782 (2010). Various courts have applied this same principle to state-created homestead exemptions, including that in Massachusetts. See Peirce, 483 B.R. at 376 (Mass. Gen. Laws ch. 188 only protects the owner's interest in the home to the extent of the monetary exemption."); In re Gebhart, 621 F.3d 1206, 1210 (9th Cir. 2010) ("The homestead exemptions available to the debtors . . . do not permit the exemption of entire properties, but rather specific dollar amounts."). The trustee reasons that, if Traverse's home remains part of the bankruptcy estate despite Traverse's homestead exemption, he may dispose of it like any other property so long as he repays Traverse the value of her exemption from the proceeds.

As a preliminary matter, we note that the rule articulated in Schwab does not apply directly to this case. In

---

[5] Although the bankruptcy court in Early ultimately concluded that the issue of the trustee's power of sale was not ripe before it, withdrawing without repudiating its observations on the matter, see 2008 WL 2569408, at *3, we believe that the court's reasoning is precisely on point.

-14-

each of the cases above, the debtor's exemption could not prevent the trustee from selling the underlying asset because that asset's value surpassed the exemption amount, creating additional equity for the bankruptcy estate. Schwab, 560 U.S. at 776; Peirce, 483 B.R. at 376; Gebhart, 621 F.3d at 1210. By contrast, where a debtor's homestead exemption equals or surpasses the total value of her property, the bankruptcy court has construed the Massachusetts homestead exemption to protect the debtor's physical ownership of as well as her financial rights in her home. Peirce, 483 B.R. at 376 ("[S]o long as the available monetary exemption is greater than or equal to the value of that property, the owner's possessory and pecuniary interests are both fully protected."). This reading accords with the established policy behind the Massachusetts homestead exemption, which "favors preservation of the family home regardless of the householder's financial condition" and inclines courts to construe the exemption "liberally in favor of debtors." Shamban v. Masidlover, 705 N.E.2d 1136, 1138 (Mass. 1999); see also Hildebrandt, 320 B.R. at 44 ("Homestead laws are designed to benefit the homestead declarant and his or her family by protecting the family residence from the claims of creditors." (internal quotation marks omitted)). We decline to depart from that practice today.

More to the point, neither Schwab nor its progeny address the precise legal question before us. The issue raised by this

-15-

case is not whether Traverse's homestead exemption withdrew her home or merely the right to its proceeds from the property of the estate. The issue is whether a trustee's powers of sale under § 363 justify selling a debtor's asset where no equity remains for the estate beyond the senior claims of secured creditors and the debtor's own exempt interest. The distinction may best be illustrated by the fact that the issue facing us today could arise even if there were no homestead exemption involved. Imagine, for example, a case in which a debtor fails to claim any homestead exemption, but the full value of her home falls short of her undefaulted mortgages on the property. In this scenario, even absent any debates about whether the debtor had withdrawn her home or merely an "interest" in her home from the bankruptcy estate, the trustee's § 363 powers would not justify selling the asset, because there would be no residual equity in the property for unsecured creditors. The trustee himself admits as much, as he acknowledges that he would not sell Traverse's home if both her mortgages remained with their banks--even though, under his own reading of Schwab, the home is technically "property" of the estate.

The trustee suggests that his preservation of Traverse's first mortgage for the bankruptcy estate makes this case different. He insists that the preserved mortgage empowers him to sell Traverse's home because, with the bankruptcy estate now standing in the shoes of the secured lienholder, the sale would directly

-16-

benefit the unsecured creditors. Just because the preserved mortgage entitles the estate to benefit from the sale of Traverse's property, however, does not mean that the trustee is by that fact empowered to sell the property so as to immediately realize that benefit. In itself, a mortgage carries neither a right of immediate ownership of Traverse's property, nor a right of immediate payment of the secured loan's outstanding value, but only a right to foreclose on Traverse's property in the event that she defaults on her loan or to receive payment in full when the home is sold through other means. And that is the extent of the rights gained by the estate by through the trustee's preservation. See Haberman, 516 F.3d at 1210 ("[T]he trustee, on behalf of the entire bankruptcy estate, in some sense steps into the shoes of the former lienholder, with the same rights in the collateralized property that the original lienholder enjoyed."); Carvell, 222 B.R. at 180 ("Preservation is just that. It simply puts the estate in the shoes of the creditor whose lien is avoided."). We make this observation not to revive the red herring argument that the trustee would need to exercise a mortgagee's power of foreclosure in order to sell Traverse's home; of course he could accomplish such a sale, when appropriate, simply in the exercise of his powers under § 363. We make the observation simply to clarify that, as far as the trustee's § 363 powers are concerned, the trustee may only sell "property of the estate," and the preserved mortgage in this case

carries no immediate ownership rights that might be seen to turn Traverse's home into the property of the estate.

To put it another way, contrary to the trustee's assertions, just because the preserved mortgage promises the bankruptcy estate a benefit from the sale of Traverse's home does not mean that the preserved mortgage creates "equity" for the estate. Bankruptcy courts have defined the equity that justifies a sale of property, consistently and explicitly, in one way: the value remaining for unsecured creditors above any secured claims and the debtor's exemption. See, e.g., Hyman, 123 B.R. at 344; In re White, 409 B.R. 491, 495 (2009); McKeever, 132 B.R. at 999. It is this equity for unsecured creditors that authorizes a trustee to liquidate the property in the first place, as the trustee should not exercise his § 363 powers for the benefit of secured creditors alone. See Scimeca Found., 497 B.R. at 781; U.S. Department of Justice, Executive Office for United States Trustees, Handbook for Chapter 7 Trustees at 8-20 (2002); Collier on Bankruptcy ¶ 725.01. Here, having avoided and preserved JP Morgan's mortgage for the benefit of the bankruptcy estate, the trustee has inherited the standing of the secured creditor. Haberman, 516 F.3d at 1210; In re Kors, Inc., 819 F.2d 19, 23 (2d Cir. 1987); Carvell, 222 B.R. at 180. But he has not changed the status of the lien as a secured lien, to be subtracted from the value of the asset before any remaining equity may be calculated. In this sense, for the very

reason that the preserved mortgage entitles the bankruptcy estate to any proceeds from Traverse's property, as a senior secured claim overriding Traverse's claimed homestead exemption, it cannot double as the unsecured equity triggering the trustee's sale powers under § 363.

The trustee, in essence, would have the preserved mortgage function as both the senior secured interest that entitles the bankruptcy estate to derive value from Traverse's property ahead of junior lienholders <u>and</u> the unsecured equity interest that excuses him from leaving the secured creditors to satisfy their claims contractually.[6] Yet precisely because of their contractual means of protecting their interests, the bankruptcy scheme typically entrusts secured creditors such as mortgagees to vindicate their claims based on their privately negotiated terms. That in some cases a mortgagee will have no immediate means for claiming the value of its collateral--for example, when the mortgagor remains current on her mortgage payments pursuant to the contractual agreement--is not a flaw in the system, but rather reflects Congress's intent not to augment the mortgagee's rights over a compliant mortgagor simply because the mortgagor enters the world of bankruptcy. <u>Cf.</u> <u>Dewsnup</u> v. <u>Timm</u>, 502 U.S. 410, 418 (1992)

---

[6] The secured creditors' contractual remedies would, of course, be subject to any lien enforcement procedures set by statute.

(noting the rule, valid since the Bankruptcy Act of 1898, that "a lien on real property passe[s] through bankruptcy unaffected").[7]

Our holding today comports not only with the most coherent reading we can make of the trustee's powers under the Bankruptcy Code, but also with any sense of fairness on these facts. As noted above, there is no dispute that if Traverse's first mortgage remained with JP Morgan she would retain her home in these exact same circumstances. We see no reason why the trustee's preservation of the mortgage under § 551 should alter that result. The objective behind the trustee's powers of avoidance and preservation is to change the priority of creditors' claims to property falling under a debtor's estate, boosting the standing of unsecured creditors against both illegitimate secured claims and junior secured creditors. See French, 440 F.3d at 154; Connelly v. Marine Midland Bank, N.A., 61 B.R. 748, 750 (W.D.N.Y. 1986). It remains a mystery to us why a provision clearly aimed at regulating the distribution of a debtor's estate among her creditors should exacerbate the debtor's substantive obligations and vulnerabilities in bankruptcy. That is especially the case here, where the

---

[7] Our analysis here is limited to a trustee's attempts to benefit unsecured creditors by avoiding a security interest on fully exempt property, selling that property, and then capturing the proceeds of the sale for the estate up to the amount of the security interest. We do not decide whether a trustee may sell fully-secured property to benefit the estate in other scenarios, for example, when selling secured property as part of a package with unsecured property would increase the value of the unsecured property itself. See Handbook for Chapter 7 Trustees at 8-20.

trustee's ability to preserve JP Morgan's mortgage derives exclusively from the failure of two banking corporations to perform due diligence and record their mortgage on Traverse's home. To sanction the sale of the debtor's home in this case would be to punish an individual consumer for the administrative oversights of the banks.[8]

We affirm today the principle that the preservation of a lien entitles a bankruptcy estate to the full value of the preserved lien--no more and no less. Where this lien is an undefaulted mortgage on otherwise exempted property, the trustee may for the benefit of the estate enjoy the liquid market value of that mortgage, claim the first proceeds from a voluntary sale, or wait to exercise the rights of a mortgagee in the event of a

---

[8] We note that, in general, our interpretation enhances predictability and lower transaction costs. Under the trustee's view, without first paying to confirm the perfection of the mortgage, no homeowner contemplating bankruptcy could predict whether the family will lose its residence merely because of a quirk in the bank's practices that no one could view as adverse to the debtor.

We also note that, to be sure, a bankruptcy trustee's avoidance powers extend to far less blameless and sympathetic scenarios, such as avoidance of fraudulent transfers under 11 U.S.C. § 548 or post-petition transfers under 11 U.S.C. § 549. None of these other circumstances is implicated by our opinion, however, in that none of them overrides a debtor's homestead exemption under § 522. Furthermore, to the extent that an avoided fraudulent or post-petition transfer of a debtor's home allows a trustee to sell the underlying property, it does so precisely by permitting the trustee to include in the estate the putatively transferred asset: the home.

default.[9]  But the trustee may not repurpose the mortgage to transform otherwise exempted assets, to which neither the estate nor the original mortgagee boasted any ownership rights, into the property of the bankruptcy estate.

### IV.  Conclusion

In the end, we see the matter differently than did the lower courts.  Accordingly, we reverse the decision of the BAP and remand to that tribunal with directions to vacate the bankruptcy court's judgment and to remand the matter to the bankruptcy court for further proceedings consistent with this opinion.

---

[9] The parties in this case have presented to us no issue regarding who is entitled to Traverse's post-petition payments. Absent a separate agreement to the contrary, avoidance and preservation of a security interest do not entitle the trustee to payments on the underlying debt.  In re Rubia, 257 B.R. 324, 327 (B.A.P. 10th Cir. 2001), aff'd, 23 F. App'x 968 (10th Cir. 2001); In re Trible, 290 B.R. 838, 845 (Bankr. D. Kan. 2003).