**In re Robert Max RUBIA, Debtor.**

**J. Michael Morris, Trustee, Plaintiff–Appellant,**

v.

**Vulcan Chemical Credit Union, Defendant–Appellee,**

**Robert Max Rubia, Defendant.**

**BAP No. KS–00–008.**
**Bankruptcy No. 98–14903.**
**Adversary No. 99–5141.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Jan. 3, 2001.

---

J. Michael Morris, Klenda, Mitchell, Austerman & Zuercher, L.L.C., Wichita, Kansas, for Plaintiff–Appellant.

Eric D. Bruce, Bruce, Bruce & Holt, L.L.C., Wichita, Kansas, for Defendant–Appellee.

Before McFEELEY, Chief Judge, CLARK, and McNIFF,[1] Bankruptcy Judges.

### OPINION

CLARK, Bankruptcy Judge.

J. Michael Morris, Chapter 7 trustee ("Trustee"), appeals an Order of the United States Bankruptcy Court of the District of Kansas dismissing his complaint seeking the turnover of certain funds from Vulcan Chemical Credit Union ("VCCU"). For the reasons set forth below, we AFFIRM the bankruptcy court's Order.

### I. *Background*

The debtor obtained three loans from VCCU: one secured by a 1993 Ford Ranger ("Ranger"); one secured by a 1993 Ford Taurus; and a signature loan. The only loan relevant to this appeal is the loan secured by the Ranger ("Ranger Loan") which is memorialized in a Credit Agreement and an Advance Request Voucher and Security Agreement. Although the Security Agreement is dated February 1998, VCCU did not perfect its security interest in the Ranger until September 1998.

On November 10, 1998, the debtor filed a petition seeking protection under Chapter 7 of the Bankruptcy Code. At that

---

1. Honorable Peter J. McNiff, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Wyoming, sitting by designation.

time, the debtor owed VCCU approximately $10,440.00 on the Ranger Loan. The debtor continued to possess the Ranger postpetition, claiming it to be exempt. We have no record that the debtor's claimed exemption was challenged. Although the debtor did not reaffirm the Ranger Loan, he continued to make payments on it after the petition date, paying VCCU a total of $1,136.00 ("Postpetition Payments"). VCCU filed a proof of claim in the debtor's case, asserting a claim for the portions of the three loans that remained unpaid by the debtor on the petition date. In addition to an unsecured claim, VCCU asserted a secured claim based, in part, on the Ranger Loan.

In February 1999, the Trustee filed an Application with the bankruptcy court representing that he and VCCU had agreed that VCCU's lien on the Ranger was avoidable because it was perfected within ninety days of the debtor's petition date. The bankruptcy court approved the Trustee's Application, avoiding VCCU's lien and preserving the lien for the benefit of the estate ("Agreed Order").

After the entry of the Agreed Order, the debtor continued to possess the Ranger. Although he ceased making payments to VCCU, he continued to make postpetition payments related to the Ranger to the Trustee. VCCU amended its proof of claim to reduce the amount of its secured claim due to the avoidance of its lien on the Ranger and to correspondingly increase the amount of its unsecured claim.

The Trustee subsequently filed a Complaint for Turnover and to Determine Rights ("Complaint") against VCCU and the debtor, alleging that the Postpetition Payments were recoverable from VCCU as property of the estate. The debtor failed to answer the Complaint, and a default judgment was entered against him, which provided that "all payments respecting the avoided lien of [VCCU] in the ... Ranger will be made to the estate." Appellant's Appendix, p. 38, Order Granting Default Judgment Against Defendant Robert Max

Rubia dated Oct. 22, 1999 ¶ 2. Furthermore, the default judgment directed the debtor to name the Trustee as the loss payee with regard to any insurance policy respecting the Ranger, and to provide the Trustee with continuous proof of insurance.

VCCU moved to dismiss the Complaint for lack of subject matter jurisdiction, arguing that (1) the Trustee had in rem rights against the Ranger, not in personam claims against VCCU, and (2) the Postpetition Payments were not property of the estate. The bankruptcy court denied VCCU's motion to dismiss, holding that it had jurisdiction over the dispute.

After a trial, the bankruptcy court ruled from the bench that the Postpetition Payments were not recoverable by the Trustee because they were not property of the estate inasmuch as they were made from the debtor's postpetition earnings. In a separate Order incorporating its bench ruling, the bankruptcy court dismissed the Complaint against VCCU with prejudice.

The Trustee filed a timely notice of appeal from the bankruptcy court's final Order, and all parties have consented to this Court's jurisdiction by failing to elect to have the appeal heard by the United States District Court for the District of Kansas. 28 U.S.C. § 158(a)(1) & (c)(1); Fed. R. Bankr.P. 8001–8002, 10th Cir. BAP L.R. 8001–1; *see Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (order is final if it " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' ") (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).

## II. *Discussion*

■ The issue in this appeal is whether the Trustee may recover the Postpetition Payments from VCCU. We review this question of law *de novo. See* Fed. R. Bankr.P. 8013; *Pierce v. Underwood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d

490 (1988); *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1370 (10th Cir.1996).

The Trustee argues that the bankruptcy court erred in dismissing his Complaint because the Postpetition Payments are recoverable as property of the estate. In particular, he maintains that the avoided lien in the Ranger is property of the estate under 11 U.S.C. § 541(a)(4),[2] and the Postpetition Payments are "proceeds" thereof under § 541(a)(6). While we question whether the Postpetition Payments are "proceeds," we will not address this issue because a review of the rights of VCCU, the debtor, and the Trustee reveals that the Trustee is not entitled to the Postpetition Payments.

Prior to the filing of the debtor's Chapter 7 petition, VCCU held a claim against the debtor, secured by a lien on the Ranger. The debtor owed VCCU a debt pursuant to the terms of the Credit Agreement, and he had the right to use the Ranger. If the debtor defaulted under the terms of the Credit Agreement, VCCU could look to the Ranger to satisfy its claim against the debtor.

After the filing of the debtor's petition, VCCU and the debtor held the same rights that they held prepetition. The Trustee held an avoidance action against VCCU as a result of the perfection of the lien on the Ranger within ninety days of the debtor's petition date.

After the entry of the Agreed Order, the fixing of VCCU's lien on the Ranger was avoided, and the fixing of that lien was automatically "preserved for the benefit of the estate." 11 U.S.C. § 551; *see* S.Rep. No. 989, 95th Cong., 2d Sess. 91 (1978), U.S.Code Cong. & Admin.News 1978, p. 5963; H.R.Rep. No. 595, 95th Cong., 1st Sess. 376 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787 (providing that lien is automatically preserved upon avoidance). This interest arising under § 551 is, as argued by the Trustee, property of the

estate under § 541(a)(4). *See C & C Co. v. Seattle First Nat'l Bank (In re Coal–X Ltd. "76")*, 60 B.R. 907, 913 (Bankr.D.Utah 1986) (citing authority). However, contrary to the Trustee's position, the nature of that interest does not give the Trustee the right to collect VCCU's debt from the debtor postpetition. *See In re Closson*, 100 B.R. 345 (Bankr.S.D.Ohio 1989).

Rather, as a result of the Agreed Order, VCCU holds an unsecured claim against the debtor's estate for the entire amount of its debt as represented by its Credit Agreement. *See* 11 U.S.C. § 502(h). Only VCCU, not the Trustee, has the right to collect that debt. *See Closson*, 100 B.R. at 347–48; *see also C & C Co. v. Seattle First Nat'l Bank (In re Coal–X Ltd. "76")*, 103 B.R. 276, 280 (D.Utah 1986) ("By avoiding and preserving the lien, the trustee simply steps into the [secured creditor's] shoes and succeeds to the [creditor's] rights *with regard to the lien*.") (emphasis added), *aff'd in relevant part and rev'd in part*, 881 F.2d 865, 866 (10th Cir.1989); 5 *Collier on Bankruptcy* ¶ 551.02[1] (Lawrence P. King ed., 15th ed. rev.2000) (preservation is of lien only, not other rights held by the creditor). The avoidance of the fixing of its lien merely means that VCCU may no longer look to the Ranger to satisfy the debt. Of course, VCCU is required to reduce its unsecured claim against the estate to reflect any reduction of its debt, including any reduction resulting from debtor's Postpetition Payments.

The debtor's debt to VCCU may be discharged and, if so, he, not the Trustee, may or may not have a cause of action against VCCU for any postpetition payments that he made to VCCU on that discharged debt. If the debtor's debt to VCCU is not discharged, the debtor's postpetition payments are merely satisfaction of that debt, and no cause of action against VCCU would exist.[3]

**2.** All future statutory references are to title 11 of the United States Code.

**3.** The debtor in this case has remained in possession of the Ranger and has been paying the Trustee postpetition. Our record contains

■ The Trustee holds the lien position that VCCU held in the Ranger prior to the lien's avoidance. *See, e.g., Retail Clerks Welfare Trust v. McCarty (In re Van de Kamp's Dutch Bakeries)*, 908 F.2d 517, 519 & n. 2 (9th Cir.1990) (it is well-established "that a trustee who avoids an interest succeeds to the priority that interest enjoyed over competing interests" and such succession may be pointless) (citing cases); *accord* 5 *Collier on Bankruptcy* ¶ 551.01[1]-[2] (Lawrence P. King ed., 15th ed. rev.2000). The value of the Trustee's lien position is measured by the value of the Ranger, but it is limited by the amount of the debtor's debt to VCCU on the petition date. *See Coal–X*, 103 B.R. at 280 & n. 6 ("[T]he extent and value of the preserved ... lien in the trustee's hands ... turns on the amount of the [creditor's] underlying [prepetition] claim against the debtor."), *aff'd in relevant part and rev'd in part*, 881 F.2d at 866 (lien was properly limited to the amount of the creditor's prepetition claim against the debtor).[4] The

Trustee has no right to any payment made to VCCU on the debt, but rather he only has rights in the Ranger up to the amount of VCCU's debt on the petition date.[5]

The dissent states that its rationale is based on fairness inasmuch as the debtor may be required to pay the amount of the Postpetition Payments twice: once to VCCU, and once to the Trustee. The Trustee may recover from the Ranger the amount of the debtor's petition date debt to VCCU, if the Ranger is worth that amount. If the Ranger is not worth that amount, the Trustee's rights in the Ranger are limited to what VCCU's rights would have been had its lien not been avoided-the value of the Ranger. Assuming that the debt to VCCU is discharged, the debtor has no liability on the prepetition debt. It is only because the record shows that the debtor has retained possession of the Ranger that the dissent assumes that the debtor is required to pay the amount owing on the Ranger to the Trustee, including any amounts that the Trustee is unable

no information related to the debtor's continued possession of the Ranger, or of a postpetition agreement between the Trustee and the debtor under which the Trustee has a right to postpetition payment from the debtor. Furthermore, the debtor is not a party in this appeal. As such, we may not assume facts not in the record, or make any ruling related to the Trustee's postpetition rights vis-a-vis the debtor over whom we have no jurisdiction.

4. Thus, in this case where no junior liens against the Ranger exist, the Trustee is entitled to the Ranger, subject to any exemption rights of the debtor. If a junior lien did exist, the Trustee would be entitled to $10,400.00, the amount of VCCU's prepetition debt, from the Ranger, with the junior lienor taking any residual value. The debtor's Postpetition Payments to VCCU do not, as argued by the dissent, reduce the amount of the Trustee's claim against the Ranger, but rather only reduce the amount of VCCU's unsecured claim against the estate. Unlike the dissent, we are unwilling to base our decision on a speculated valuation of the Ranger or the lien, and because of the above rationale, we have no need to.

5. The dissent correctly states that we do not explain how the estate realizes its claim

against the Ranger. This lack of explanation is not mistaken, however, inasmuch as we do not view that issue to be before us. The only issue in this case is whether the Trustee may recover the Postpetition Payments from VCCU. In deciding whether recovery against VCCU is appropriate, we need not decide how the Trustee will act in regard to the avoided lien against the Ranger, and we do not have the record or jurisdiction over the debtor to do so. Rather, we only can decide whether VCCU is liable to the estate for the Postpetition Payments made to it by the debtor. We do not, as stated by the dissent, argue that "the estate has no right to collect Postpetition Payments by virtue of the estate's claim." We merely say that the Trustee cannot collect VCCU's prepetition debt from the debtor, and that the Trustee cannot recover the Postpetition Payments from VCCU. As such, we never reach the issue of whether the Postpetition Payments are "proceeds" of the avoided lien and, therefore, property of the estate under § 541(a)(6). But, even if we were to address the issue, we disagree with the dissent that the Postpetition Payments are "proceeds" as this word is defined as "whatever is received upon the ... collection ... *of collateral....*" Kan. Stat. Ann. § 84–9–306(1) (emphasis added). This case simply does not involve collection of collateral.

to recover from VCCU. However, absent an agreement between the Trustee and the debtor requiring the debtor to pay for the Ranger, the Trustee has no right to collect anything from the debtor inasmuch as the Trustee's rights are solely in the Ranger. Our record contains no information about such an agreement, and the debtor is not a party to this appeal. We therefore do not know what, if anything, the debtor has agreed or may agree to pay to the Trustee, or even whether such an agreement would be appropriate, and we may not assume that the value of the Ranger is the value of the prepetition debt because we have no record that the Ranger has been valued. Finally, we note that unsecured creditors were not harmed and, in fact, were benefitted by the Postpetition Payments because VCCU's unsecured debt has been reduced.

### III. *Conclusion*

For the reasons set forth above, the Trustee is not entitled to recover the Postpetition Payments and, therefore, the bankruptcy court's Order is AFFIRMED.

McFEELEY, Chief Judge, dissenting:

I respectfully dissent. At issue is whether a Debtor's post petition payments on an avoided lien constitute proceeds of that lien. The majority does not reach this issue as it maintains that a Trustee never has a right to collect the debt amount as represented by the lien because the avoidance of the lien only serves to preserve the position of the estate with respect to the other creditors. As I explain below, I disagree with them on this point. An examination of the way the bankruptcy code operates in a

1. *See* 11 U.S.C. § 544(a) (giving the trustee the same avoidance powers as the following: 1) a judicial lien creditor; 2) a creditor holding an unsatisfied returned execution; 3) a hypothetical or real bona fide purchaser of real property).

2. The legislative purpose behind bringing the preserved lien into the estate is to maintain the priority position of creditors vis-a-vis each other-that is, the legislature wanted to prevent

lien avoidance demonstrates the flaw in the majority's argument.

Once a bankruptcy case has begun, the trustee is given certain "avoidance" rights and powers. *See, e.g.,* 11 U.S.C. §§ 544, 547, 548. Under § 544(a) of the bankruptcy code, commonly known as the "strong arm clause," a trustee has the authority to avoid unperfected liens to the same extent as certain hypothetical ideal creditors.[1] Any transfer avoided by the trustee under § 544(a) "is preserved for the benefit of the estate but only with respect to property of the estate." 11 U.S.C. § 551.[2]

The initiation of a bankruptcy case creates an estate that includes all legal and equitable interests of the debtor in property as of the date of the filing of the petition. 11 U.S.C. § 541(a). Included in property of the estate is "any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title." 11 U.S.C. § 541(a)(4). Through the conjunction of §§ 541(a) and 551, a lien avoided under § 544(a) becomes property of the estate.

Here, the Trustee avoided the lien on the Ranger. The avoidance of the lien related back to the filing date of the bankruptcy petition. It is the value of the lien on that date that entered the chapter 7 estate and became an asset of the estate.

The bankruptcy code defines a lien as "a charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). Pursuant to the bankruptcy code, the estate has a claim against the property by virtue of the lien. The Bankruptcy Code defines

the junior lienholders from moving up in priority. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 376 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 91 (1978); *see also C & C Co. v. Seattle First Nat'l Bank (In re Coal–X Ltd. "76"),* 60 B.R. 907, 910–12 (Bankr.D.Utah 1986) (providing a comprehensive discussion on the language and the legislative history of § 551).

"claim" as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed contingent, matured, unmatured, disputed, undisputed, legal equitable, secured or unsecured." *Id.* § 101(5)(A).

Since the avoided lien gives the estate a claim against the property, how is the amount of that claim to be determined? The amount of the claim can only be measured by the debt represented by the lien. While it is the lien that enters the estate as an asset, the trustee can only determine the value of the lien to the estate through a valuation of the secured property. If no valuation of the security is done, the lien is fully secured, and the value of the lien may only be determined through scrutinizing the debtor's underlying obligation. The value of a fully secured lien and the value of the underlying obligation are the same. Therefore, the Trustee must look to the debtor's underlying obligation to determine the value of the lien to the estate.

Here, as of the Debtor's filing date, the value of the underlying obligation was approximately $10,440.00. Consequently, this sum was the value of the lien brought into the estate pursuant to § 544(a).

The majority acknowledges that the avoidance and preservation of the lien gives the estate a claim in the Ranger up to the amount of VCCU's debt on the petition date. However, the majority never explains how the estate realizes that claim. They argue that they do not address the question of whether the estate may collect Postpetition Payments by virtue of the estate's claim because that issue is not before them. This is clearly incorrect as this is precisely the issue before this court: Are postpetition payments on a lien the proceeds of that lien? As expressly provided in the Bankruptcy Code, a trustee has the right to claim any proceeds of property of the estate.

Section 541(a)(6) expands the reach of "property of the estate" to include "proceeds ... of or from property of the estate." 11 U.S.C. § 541(a)(6). The bankruptcy code never explicitly defines "proceeds." Because property interests are created and defined through state law, *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), courts must look to Kansas state law to obtain a definition of "proceeds." Kansas has adopted the Uniform Commercial Code ("UCC"). Pursuant to the UCC, "proceeds" include "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds." Kan. Stat. Ann. § 84–9–306(1). As explained by the Tenth Circuit, the term "collection" in the context of a debt or claim may be defined as "payment or liquidation of it." *In re Hastie*, 2 F.3d 1042, 1045 (10th Cir.1993).

After filing his Chapter 7 petition, the Debtor reduced his obligation to VCCU by making post petition payments totaling $1,136.00. Here, because the lien is fully secured, and thus, the lien and the obligation are inextricably entwined, the Debtor's post petition payments reduced the secured obligation and concurrently the lien. Because the post petition payments reduced the value of the lien by liquidating a portion of the underlying obligation, these payments are proceeds of the lien.[3]

In an argument that the majority never addresses, VCCU contends that the pay-

---

3. Two cases addressing this specific issue were found. The most clearly articulated explanation for denying a trustee recovery on post petition payments is given in *In re Closson*, 100 B.R. 345, 347 (Bankr.S.D.Ohio 1989). In *Closson*, the bankruptcy judge found that a trustee could not recover post petition payments on an avoided lien on the grounds that § 550 limits the extent of a trustee's recovery to the value of the property transferred. *Id.* Because in this case the value of the property is equivalent to the value of the

lien, *Closson* does not resolve the question of whether the post petition payments are proceeds of the lien.

The other case that addressed this issue is *Kelley v. Chevy Chase Bank (In re Smith)*, 236 B.R. 91, 101 (Bankr.M.D.Ga.1999). However, *In re Smith* also offers no guidance; it asserts without further explanation that post petition payments are not recoverable because they are made with post petition earnings, and therefore, there is no loss to the estate. *Id.*

ments were not a collection on the lien, merely a post petition payment of the unsecured debt.[4] VCCU's argument hinges on the premise that there was a secured and an unsecured portion of debt owed it. If there were secured and unsecured portions of the Debtor's obligation, the Debtor could voluntarily choose to make payments on the unsecured portion. *See Gerwer v. Salzman (In re Gerwer)*, 253 B.R. 66, 70 (9th Cir. BAP 2000) (explaining that a Debtor has a right to direct the allocation of voluntary payments). However, because no valuation was ever done on the Ranger nor does the record indicate that either party asked for a valuation, I must presume that the value of the Ranger was the value of the obligation. Since the Ranger was fully secured, the Debtor could not have chosen to make payments to reduce any unsecured obligation; any payments made on the Debtor's obligation could have been applied only to the fully secured lien.[5]

Alternatively, VCCU contends that the post petition payments cannot be "proceeds of the lien" because proceeds cannot come from a debtor's post petition earnings. VCCU grounds this argument on language in § 541(a)(6) which provides that proceeds are property of the estate "except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6). VCCU misreads this limiting phrase. Clearly, post petition earnings *per se* are not property of the estate. However, as VCCU itself points out, the Debtor has the right to determine what he wants to do with his post petition earnings. In fact,

following the lien avoidance, the Debtor merely redirected the payments he had been depositing with VCCU to the Trustee. Presumably these payments are property of the estate. Illogically, VCCU and the majority suggest that it is the identity of the payor of those payments that determines whether the payments are proceeds of an avoided lien. This argument is flawed. When making a determination as to whether such payments may come into the estate as proceeds of an avoided lien, the bankruptcy court must look at the context in which such payments are made. Equity demands this result. The prevailing policy behind the bankruptcy code is to provide every debtor with a fresh start while compensating creditors equitably. To permit VCCU to retain the payments would be to allow it to receive a windfall at the expense of either the Debtor or the Creditors. Potentially, the Debtor could be harmed because a lien avoidance relates back and is valued as of the date of the petition. Lien avoidance usually happens months after the original petition date. The Debtor conceivably could be forced to pay twice; once to VCCU and again to the Trustee.[6] Alternatively, if the Trustee reduces the Debtor's obligation to the sum owed following the post petition payments, the other creditors would be harmed because there will be less in the estate to satisfy their claims.

For these reasons, I would reverse the bankruptcy court.

Here, the diminution in the total value of the lien is a loss to the estate.

4. In response to the Trustee's arguments, VCCU also argues the following points: 1) the voluntary or involuntary nature of the payment is improperly raised as it was not raised at trial, and furthermore, the trustee lacks standing to make it; 2) if the issue is properly raised, the intent of the Debtor is irrelevant to the issue of whether the post petition payments are recoverable by the Trustee; 3) even if intent is relevant, the payments were voluntary as it was the Debtor who designated how

the payments were to be made. Since there was no secured and unsecured portion of debt, these points are irrelevant here.

5. Additionally, the Debtor testified that his intention was to pay down the in rem debt-the lien-on the Ranger.

6. I note that more substantial sums than the one at issue here could be in dispute. For example, the lien could potentially not be avoided until two years after the petition date.