In re Christopher Lee **HABERMAN,** also known as Chris L. Haberman, and Catherine May Haberman, also known as Cathie M. Haberman, also known as Cathie M. Tucker, Debtors.

**J. Michael Morris, Trustee, Plaintiff—Appellant,**

v.

**St. John National Bank, Christopher Lee Haberman, and Catherine May Haberman, Defendants—Appellees.**

BAP. No. KS–06–008.
Bankruptcy No. 02–11974–7.
Adversary No. 02–5273.

United States Bankruptcy Appellate Panel for the Tenth Circuit.

Aug. 9, 2006.

Submitted on the briefs: * J. Michael Morris of Klenda, Mitchell, Austerman, & Zuercher, L.L.C., Wichita, Kansas, for Plaintiff—Appellant.

Before CORNISH, BROWN, and THURMAN, Bankruptcy Judges.

## OPINION

CORNISH, Bankruptcy Judge.

J. Michael Morris, Chapter 7 Trustee ("Trustee"), appeals an order of the bankruptcy court limiting his recovery of postpetition payments in a lien avoidance action to the value of the collateral on the date of bankruptcy and denying his motion to recover postpetition payments made in excess of the value of that collateral.[1] For the following reasons, we affirm the decision of the bankruptcy court.

## I.  Background

Debtors Christopher and Catherine Haberman ("Debtors") financed the purchase of a computer for $3,050 with creditor St.

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

1.  Neither the Debtors nor St. John National Bank submitted a brief in this appeal. This Court's review is based upon the Appellant's Brief and Appendix only.

John National Bank ("Bank") and also pledged their 1980 Pontiac Trans Am as security. Through inadvertence, the Bank failed to properly perfect its lien on the car. The Trustee filed an adversary proceeding against the Bank and the Debtors to avoid the security interest pursuant to 11 U.S.C. § 544(a),[2] recover the value of that interest pursuant to 11 U.S.C. § 550,[3] and preserve the avoided lien for the benefit of the estate pursuant to 11 U.S.C. § 551.[4] Additionally, the Trustee sought a court order directing the Bank to turn over all postpetition payments received as well as future payments. The Trustee filed a separate motion seeking an order directing the Debtors to make postpetition payments on the note to the bankruptcy estate, pending the outcome of the adversary action. Alternatively, the Trustee asked that if postpetition payments were to be made to the Bank pending the outcome of the adversary, then those payments should be turned over to the estate should he prevail in avoiding the Bank's lien.

The bankruptcy court held a hearing on the Trustee's motion regarding postpetition payments. The court's minute entry ordered the Debtors to continue making payments to the Bank, but if the Bank's security interest was avoided, payments would be returned to the Trustee.[5] A separate order memorializing the court's decision was filed on January 6, 2003 ("Order Establishing Procedure").[6] It directed the Debtors to make payments to the Bank and stated that if the Trustee successfully avoided the bank's security interest, all postpetition payments would become property of the estate and the Bank would have to turn over those payments to the Trustee. This order was approved by the Trustee, the Debtors' counsel, and the Bank's counsel.

The bankruptcy court later determined that the Trustee could avoid the Bank's lien because it had not been properly perfected under Kansas law. The court limited the Trustee's recovery to the value of the creditor's claim as of the date of bankruptcy, or the value of the collateral on that day, whichever was less.[7] It also noted that there was a dispute as to whether the "Order Establishing Procedure" was an agreed order, and asked the parties to submit additional information regarding the value of the vehicle and the amount of postpetition payments made by the Debtors.

The Trustee and the Bank stipulated that on the date the bankruptcy was filed the fair market value of the vehicle was $2,000.00, and the amount owed to the Bank was $3,237.50. The Debtors paid the amount owed in full while the adversary was pending. The court determined that all the Trustee was entitled to recover was the value of the vehicle on the date of bankruptcy, therefore it ordered the Bank to pay the estate $2,000.00. The court also

---

**2.** Unless otherwise specified, all references to the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure are to sections and rules in effect prior to October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective.

**3.** It appears that the Trustee has abandoned his claim under this section since he did not raise it on appeal.

**4.** Debtors claimed an exemption in the vehicle, which was not contested.

**5.** Courtroom Minute Sheet, December 12, 2002, *in* Appellant's Appendix at 24.

**6.** Appellant's Appendix at 25–26.

**7.** The court relied upon *Morris v. Vulcan Chem. Credit Union (In re Rubia)*, 257 B.R. 324 (10th Cir. BAP), *aff'd by unpub. op.*, 23 Fed.Appx. 968 (10th Cir.2001).

stated that the earlier ruling regarding postpetition payments was meant as an interim order, and since the parties had not agreed to it, the court was free to revisit the issue regarding recovery of payments by the Trustee. This appeal followed.

## II.  Jurisdiction

This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002. None of the parties elected to have this appeal heard by the United States District Court for the District of Kansas, thus consenting to review by this Court.

A decision is considered final if "it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). Although the record includes several orders of the bankruptcy court which disposed of various issues, the opinion and judgment filed on February 10, 2006, finally disposed of the remaining issues in the case and is a final, appealable order from which a timely appeal has been taken.

## III.  Standard of Review

■■■ The facts are not disputed, therefore, the only issues presented on appeal involve questions of law. Questions of law are reviewable *de novo*. *Pierce v. Under-*

*wood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1370 (10th Cir.1996). *De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

## IV.  Discussion

■■■ The Trustee raises three issues on appeal. The first two deal with the correct law to apply in determining the amount that the Trustee is entitled to recover from the Bank. The third issue is a challenge to the bankruptcy court's authority to modify an interim order. We address this issue first, and dismiss it summarily since the Trustee concedes that the "Order Establishing Procedure" was intended to be an interim decision, subject to revision by the court.[8] In clarifying the interim order, the bankruptcy court no doubt recognized that the Trustee could not recover something he was not entitled to recover.[9] The Trustee's arguments challenging the court's revision are actually objections to the legal analysis employed by the court in valuing the avoided lien and are more appropriately considered in this Court's discussion of that issue.

■■■ The Trustee avoided the Bank's lien using his status as a judicial lien creditor pursuant to 11 U.S.C. § 544(a). Once the lien was avoided, it was automatically preserved for the benefit of the bankruptcy estate, and the Trustee inherited the position of the entity whose lien was avoided, i.e., he inherited the position of the Bank. 11 U.S.C. §§ 544(a), 551.[10] Section

8.  Brief of Appellant at 16.

9.  As previously mentioned, the court noted that there was some dispute as to whether the order accurately reflected an agreement of the parties.

10.  The applicable language of § 551 states: "Any transfer avoided under section ... 544 ... is preserved for the benefit of the estate but only with respect to property of the estate."

551 does not elevate the status of the avoided lien, but is intended to prevent junior lien holders "from improving their position at the expense of the estate when a senior lien is avoided." [11] In other words, § 551 only preserves the transfer that has been avoided—in this case, the Bank's security interest in the vehicle—but does not expand or otherwise enhance the status of the avoided lien. [12] Other rights of the creditor whose lien has been avoided are not preserved for the benefit of the estate. 5 *Collier on Bankruptcy* ¶ 551.02[1] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.2006).

■ Once the lien was avoided and preserved for the estate, the Trustee argues that he succeeded to the avoided creditor's interest in the property, which he believes to be the entire amount owed to the creditor on the date of bankruptcy. He bases this belief on the possibility that a creditor *could* recover more than the value of the collateral if the debtor elects to keep the collateral and pay the debt in full. This, however, ignores the fact that a creditor under that scenario could not rely on its lien on the collateral to ensure full recovery of the debt unless the collateral is worth at least as much as the debt. If the debtor defaults, the creditor is forced to repossess and sell the collateral, and if the sale proceeds are insufficient to satisfy the debt in full, the creditor is left with an unsecured deficiency claim. The creditor is not secured simply because of a debtor's promise to pay. The Trustee does recog-

nize this fact since he admits as a practical matter that if a debtor surrenders the collateral all a trustee would be entitled to is the value of that collateral. [13]

The primary focus of the Trustee's appeal is the applicability of an earlier decision by this Court, *Morris v. Vulcan Chemical Credit Union (In re Rubia)*, 257 B.R. 324 (10th Cir. BAP), *aff'd by unpub. op.*, 23 Fed.Appx. 968 (10th Cir.2001). [14] He argues that (1) *Rubia* is not applicable to the facts of this case and any comment therein regarding similar factual situations is dicta only, (2) the analysis of that case is incorrect and not supported by other case law, and (3) a United States Supreme Court case should control the analysis of this case.

This Court is persuaded that *Rubia's* analysis is controlling in this case. *Rubia* involved a similar factual situation consisting of a Chapter 7 debtor who had obtained a loan by granting a security interest in his vehicle. After filing bankruptcy, the debtor retained the vehicle and kept making payments to the creditor until he entered an agreement with the trustee to make payments to the bankruptcy estate. The trustee avoided the creditor's lien, and moved to recover the postpetition payments made by the debtor to the creditor. This Court held that, "absent an agreement between the Trustee and the debtor requiring the debtor to pay for the [collateral], the Trustee has no right to collect anything from the debtor inasmuch as the

**11.** S.Rep. No. 95–989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 1, 376; H.R.Rep. No. 95–595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6332.

**12.** A "transfer" is defined in 11 U.S.C. § 101(54) as "every mode, direct or indirect, . . . of disposing of or parting with property or with an interest in property . . . ."

**13.** Brief of Appellant at 12.

**14.** Appellant Morris was also the unsuccessful Appellant in *Rubia*, and advances most of his arguments in that case here. This Court notes that he has pursued several different theories in other bankruptcy cases in support of his mission to recover all postpetition payments in lien avoidance and preference actions. His quest is certainly admirable, though unsuccessful to date.

Trustee's rights are solely in the [collateral]." *Id.* at 329. Under § 551, this Court stated that the trustee held the same lien position that the creditor held in the vehicle prior to the lien's avoidance. The trustee had no right to require the debtor to pay anything more than the value of the vehicle or the value of the debt, whichever was less. If the vehicle was not worth the entire amount of the debt, the trustee's rights were limited to what the creditor's rights would have been absent avoidance of its lien, which was the value of the vehicle. *Id.* at 328. This Court affirmed the order of the bankruptcy court denying the trustee's request to recover the requested postpetition payments. This decision was appealed to the Tenth Circuit Court of Appeals and was affirmed in an unpublished decision.[15] In rendering its decision, the Tenth Circuit stated that it approved of the analysis in the BAP opinion.

■ The Trustee argues that any statements in *Rubia* limiting the value of the lien to the value of the collateral are dicta and, therefore, not binding upon this Court. This Court believes, however, that the statements made by it in *Rubia* are not dicta. "Dicta are 'statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand.' " *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1184 (10th Cir.1995),

quoting *Black's Law Dictionary* 454 (6th ed.1990). In *Rubia,* the court did not decide how the trustee was to recover the estate's claim against the vehicle, but it did establish how to value that claim in the event the estate seeks to recover it. An argument could certainly be made that, under *Rubia,* this Trustee is not entitled to collect anything from the Bank since *Rubia* affirmed the bankruptcy court's decision to deny recovery by the trustee of the postpetition payments he sought from the creditor. Thus, a trustee could be limited to recovering the estate's claim from the debtors themselves or the collateral. The *Rubia* court, however, did not absolutely foreclose the possibility that a court could order some recovery by a trustee from a creditor.[16] 257 B.R. at 328 n. 5. In this case, the bankruptcy court ruled that the Trustee could recover $2,000.00 from the Bank. Since the Bank has not filed a cross-appeal, we need not address whether it was proper for the court to enter any judgment against the Bank. We limit our review here to the only issue raised in this appeal, whether the bankruptcy court properly limited the Trustee's recovery to the lesser of the value of the collateral or the amount of the remaining debt.

Regardless of the method employed to satisfy the estate's claim as a lien holder, the valuation of that claim is correctly stated in *Rubia.* Once the Trustee avoided the Bank's lien, he inherited the Bank's

---

**15.** This Court is certainly aware that the Tenth Circuit does not favor the citation of orders and judgments; however, pursuant to 10th Cir. R. 36, issuance of an order and judgment simply means that the case did not involve application of new points of law that would make the Tenth Circuit's decision a valuable precedent. 10th Cir. R. 36.1. As a case with virtually the same issues and facts, this Court believes that the Tenth Circuit's affirmation of *Rubia* is of persuasive value and helpful in the determination of the issues involved in this appeal.

**16.** In *Rubia,* the trustee had an agreement with the debtor that the debtor would make his payments to the estate after a certain point in time. In this case, however, there was no such agreement so the Bank received all of the Debtors' payments. The estate would receive nothing as a lien claimant unless the Trustee sought payment from the Debtors, repossessed the vehicle, or obtained some recovery from the Bank.

position prior to avoidance and could not expand that position by enforcing the lien over and above the value of the collateral. His rights in the collateral were to be valued at the amount of the Bank's debt on the petition date, limited by the value of the collateral on that date. *Id.* at 328. That is all the Bank would have been entitled to if it chose to enforce its lien and it is all the Trustee was entitled to. Section 551 simply does not expand a trustee's rights to recover all payments made to a creditor, regardless of the value of the lien and the collateral.

The only legal authority cited by the Trustee in support of his expansive view of the value of the estate's claim is *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). *Dewsnup* involved a debtor who sought a determination of the validity, extent, and priority of a mortgage on real property that the trustee had abandoned. The Supreme Court would not allow her to "strip down" the creditor's mortgage to the value of the real estate and avoid its lien over that amount, citing 11 U.S.C. § 506(d). The Court, however, expressly limited its holding to the specific factual situation before it, and unequivocally stated that the holding should not be extended beyond those facts. This Court is not aware of any cases applying the *Dewsnup* decision to a trustee's rights to avoid a lien, nor does the Trustee cite to any.

The Supreme Court reached a different result regarding the valuation of an undersecured claim in personal property in *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). In an appeal from a Chapter 13 case, the Supreme Court held that the value of a secured claim is determined pursuant to 11 U.S.C. § 506(a), a section also discussed in *Dewsnup*. The Court further held that a creditor's claim is secured only to the extent of the value of the collateral securing the debt, and is unsecured as to the amount over that value.[17] Given the Supreme Court's express prohibition against the expansion of its holding in *Dewsnup*, and the fact that the issues of *Rash* are much more similar to those raised in this case, this Court rejects the Trustee's argument that *Dewsnup* is controlling. Instead, this Court determines that the value of the Bank's secured claim prior to avoidance was the value of the collateral, not the value of the debt, and was unsecured as to the amount over the collateral's value. Under § 551, the Trustee and the estate inherited the value of the secured portion of the Bank's claim.

The Trustee is obviously frustrated with how to proceed in cases where the value of the collateral may be declining, and states that he may not receive the value for years to come.[18] Under *Rubia* and this Court's decision, however, the Trustee and the estate are protected against diminution in value since they are awarded the value of the property at the date of the bankruptcy petition, not a later date. The Court notes that there is always a risk that any great delay in the recovery of collateral may result in diminution of its value. That, however, is a risk that any creditor would have, and the Trustee should not be elevated to a higher position. The Trustee also expresses frustration that he has revised his practices in an attempt to comply with *Rubia*, yet he is still unable to accomplish his goal of recovering the full amount of an

---

**17.** 520 U.S. at 961, 117 S.Ct. 1879. The Court further analyzed the proper method of valuation; however, the parties hereto stipulated as to the value of the collateral on the petition date, and that issue is not before this Court.

**18.** Brief of Appellant at 17.

avoided lien creditor's claim on the date of bankruptcy, regardless of the value of the collateral. He seeks a determination, once and for all, that the value of a lien equals the value of the underlying debt, in accordance with his reading of *Dewsnup*. However, there is simply no precedent nor authority for such a determination.

## V. Conclusion

For the reasons stated herein, the decision of the bankruptcy court limiting the Trustee's recovery from the Bank to $2,000.00 is AFFIRMED.