**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 22, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: CHRISTOPHER LEE
HABERMAN, also known as Chris L.
Haberman; CATHERINE MAY
HABERMAN, also known as Cathie
M. Haberman, also known as Cathie
M. Tucker,

    Debtors.

----------------------------------------

J. MICHAEL MORRIS, Trustee,

    Plaintiff - Appellant,

v.

ST. JOHN NATIONAL BANK,

    Defendant - Appellee,


CHRISTOPHER LEE HABERMAN
and CATHERINE MAY
HABERMAN,

    Defendants.

No. 06-3324

---

**Appeal from the United States Bankruptcy Appellate Panel**
**for the Tenth Circuit**
**(B.A.P. No. KS-06-008)**

---

Submitted on the briefs:

J. Michael Morris of Klenda, Mitchell, Austerman & Zuercher, L.L.C., Wichita, Kansas, for Plaintiff-Appellant.*

---

Before **O'BRIEN,** Circuit Judge, **BRORBY,** Senior Circuit Judge, and **GORSUCH**, Circuit Judge.

---

**GORSUCH**, Circuit Judge.

---

At one level, this is a dispute over loan payments secured by a nearly 30 year old Pontiac Trans Am.  At another level, this case tests the limits of a bankruptcy trustee's statutory power to displace existing lienholders.  Agreeing with the Bankruptcy Appellate Panel of the Tenth Circuit ("BAP"), we hold that a bankruptcy trustee who successfully avoids a lien pursuant to 11 U.S.C. §§ 544 and 551 preserves for the bankruptcy estate the value of the avoided lien, but does not automatically assume other rights the original lienholder may have against the debtor.

---

* Appellee St. John National Bank submitted a deficient brief to the court but failed, after notice and an opportunity to correct the deficiencies identified by the court, to file a corrected brief.  The court, has, nonetheless, exercised its discretion to consider the arguments presented in appellee's brief.  After examining the briefs and appellate record, this panel has determined unanimously to honor counsel's request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.

I

In 2001, Christopher and Catherine Haberman (the "Debtors" or "Habermans") borrowed $3,050 from St. John National Bank ("Bank") in order to purchase a new computer. To secure their loan, the Habermans granted the Bank a security interest in their 1980 Pontiac Trans Am. A year later, the Habermans filed for Chapter 7 bankruptcy and claimed the Trans Am as exempt from the bankruptcy estate. On the date they filed bankruptcy, they owed the Bank $3,237.50 on the loan, inclusive of interest, and the fair market value of their Trans Am was $2,000. *Morris v. St. John Nat'l Bank (In re Haberman)*, 347 B.R. 411, 413 (B.A.P. 10th Cir. 2006).

The bankruptcy trustee, Michael Morris (the "Trustee"), soon discovered that, through inadvertence, the Bank failed to perfect its security interest in the Trans Am. Seeking to protect the estate's interests, the Trustee filed an adversary action against the Bank and the Debtors to avoid the security interest pursuant to 11 U.S.C. § 544(a) and preserve the avoided lien for the benefit of the estate pursuant to 11 U.S.C. § 551. *In re Haberman*, 347 B.R. at 413.

While the Trustee litigated his adversary action, the bankruptcy court issued interim orders permitting the Habermans to retain possession of the Trans Am and continue making their loan payments to the Bank, with the understanding that, should the Trustee prevail, he could collect an appropriate sum from the

Bank. And, indeed, the Habermans continued making payments on their loan, eventually paying off the full balance.

At the conclusion of the Trustee's adversary proceeding, the bankruptcy court determined that the Trustee was indeed entitled to avoid the Bank's lien. But the question then arose: Should the Trustee recoup from the Bank the value of the lien itself as of the date of the Habermans' bankruptcy filing – that is, the $2,000 value of the Trans Am? Or was the Trustee entitled to recover the full amount of the loan as of the same date – that is, $3,237.50?[1]

The bankruptcy court ruled that a trustee who voids a lien pursuant to 11 U.S.C. §§ 544 and 551 takes for the bankruptcy estate only the value of the lien itself and ordered the Bank to disburse to the Trustee $2,000.[2] The BAP affirmed, holding that "[o]nce the Trustee avoided the Bank's lien, he inherited the Bank's position prior to avoidance and could not expand that position by enforcing the lien over and above the value of the collateral. His rights in the collateral were to

---

[1] After surveying the possible valuation dates, the bankruptcy court decided the date of the bankruptcy filing, the earliest possible date, was most appropriate because 11 U.S.C. § 522 defines the value of exempt property as its fair market value as of the date of filing, the property is a type that depreciates, and the Debtors had use of the car without being required to provide adequate protection. *Morris v. St. John Nat'l Bank (In re Haberman)*, No. 02-11974-7, at 12-13 (Bankr. Ct. D. Kan. Feb. 10, 2006). The court's decision is not challenged on appeal.

[2] Throughout these proceedings, the Bank has not challenged the bankruptcy court's authority to impose a judgment against it in this amount. *See In re Haberman*, 347 B.R. at 416.

be valued at the amount of the Bank's debt on the petition date, limited by the value of the collateral on that date." *In re Haberman*, 347 B.R. at 416-17. The Trustee then filed this appeal, which we entertain pursuant to 28 U.S.C. § 158(d).

II

The Trustee argues before us that the bankruptcy laws permit him to recoup the full value of the loan rather than just the value of the Bank's secured interest. To be sure the amount at stake isn't huge – $1,237.50 representing the difference in these two sums. But the Trustee submits that the issue recurs frequently, and is one that merits clarification because it goes to the core of his statutory rights and duties. Indeed, "he has pursued several different theories in other bankruptcy cases in support of his mission to recover all postpetition payments in lien avoidance and preference actions." *In re Haberman*, 347 B.R. at 415 n.14. As the BAP has put it, and we agree, "though unsuccessful to date," the Trustee's efforts on behalf of the estates he represents are "certainly admirable." *Id.*

Because the alleged error the Trustee identifies is, in all events, one entirely of law, we review the BAP's decision *de novo*. In doing so, we begin at the beginning, by acknowledging that liens generally pass through bankruptcy unaffected, as they did before the enactment of the Bankruptcy Code. *See Dewsnup v. Timm*, 502 U.S. 410, 417 (1992); *Farrey v. Sanderfoot*, 500 U.S. 291, 297 (1991). Various provisions of the Bankruptcy Code, of course, create certain exceptions to this rule. Relevant for our purposes, these exceptions include the

trustee's strong arm powers to avoid liens and transfers and preserve them for the bankruptcy estate under 11 U.S.C. §§ 544 and 551.

In Section 544(a)(1), Congress afforded trustees the power to avoid any transfer or obligation that a hypothetical creditor with an unsatisfied judicial lien on the debtor's property could avoid under relevant state nonbankruptcy law. *See* 11 U.S.C. § 544(a)(1);[3] *see also* 5 Collier on Bankruptcy ¶ 544.02 (15th ed.). That is, just as any other creditor could've avoided the lien on the Trans Am because of the Bank's failure to perfect its security interest under state law, Congress allowed the Trustee to do the same in bankruptcy.

Having avoided the lien, what happens next? In Section 551, Congress directed that "[a]ny transfer avoided . . . or any lien void[ed] . . . is preserved for the benefit of the estate." 11 U.S.C. § 551. So, the trustee, on behalf of the entire bankruptcy estate, in some sense steps into the shoes of the former lienholder, with the same rights in the collateralized property that the original lienholder enjoyed. Likewise, the trustee, on behalf of the entire estate, assumes

---

[3] The pertinent text of section 544(a)(1) provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by–

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists . . . .

the original lienholder's position in the line of secured creditors; in this way, Congress sought to assure that the avoidance of a lien doesn't simply benefit junior lienholders who would otherwise gain an improved security position and might, when the estate is limited, prove the only beneficiaries of the trustee's actions. *See* S. Rep. No. 95-989, at 91 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5877 (noting that the preservation of avoided liens principally serves to prevent "junior lienors from improving their position at the expense of the estate when a senior lien is avoided"); H.R. Rep. No. 95-595, at 376 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6332 (same).

But, while Section 551 places the estate in the shoes of the displaced lienholder in certain respects, in others it does not. Section 551 says that only "liens" in particular, and "transfers" more generally, may be taken by the trustee for the benefit of the estate. Section 101(54) defines the broader term "transfer" to embrace liens but also certain other dispositions of property interests, including "the creation of a lien; the retention of title as a security interest; the foreclosure of a debtor's equity of redemption; or each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property." 11 U.S.C. § 101(54).[4]

---

[4] 11 U.S.C. § 101(37) further underscores that liens are a subset of transfers, defining the term lien as a "charge against or interest in property to secure payment of a debt or performance of an obligation."

Though encompassing a wide array of modes of disposition of property interests, this definition does not, by its terms, cover contractual promises to future payments. In this respect at least, the statute appears to conform to the generally recognized (if sometimes hazardous to define) line between property and contract relations, affording the trustee the right to take for the benefit of the estate property but not purely contractual interests.[5] As Corbin notes, "a fully effective exchange [or, we might say here, transfer], without including any enforceable promise [of future performance] by either party, creates numerous legal relations [that] are customarily described as property relations and not as contractual relations. This is because they are relations not merely between the two parties themselves, but between . . . all . . . persons" who as a society recognize the transfer of a property interest. 1 Corbin on Contracts § 1.3 (rev. ed. 1993). The person-to-person contractual right embodied in a promise to pay some sum in the future is thus distinct and independent from the present property right created and recognized by society when one is given an interest in property such as a lien. *Id.*

So, for example, in *Robinson v. Howard Bank (In re Kors, Inc.)*, 819 F.2d 19, 23-24 (2d Cir. 1987), our sister circuit held that, while the benefit of an avoided security interest belonged to the estate under Section 551, the bank

___

[5] This is not to say that the statute excludes *only* contractual interests from the definition of "transfer." We do not propose to interpret Section 101(54) as it relates to circumstances not raised by the facts of this case.

whose lien was avoided nonetheless retained its interest in a contract with the debtor – even though that contract, in the form of a subordination agreement, was part of the same transaction and ancillary to the avoided security interest. "[T]he subordination agreement is not a part of the Bank's unperfected security interest and is not itself a security interest," the court explained, "and therefore the trustee's powers under § 544(a)(1) and § 551 do not extend to the Bank's rights under the subordination agreement." *Id.* at 23. Collier's makes much the same point, explaining that "Section 551 preserves only 'transfers' and 'liens.' Related or ancillary rights held by the party whose lien has been avoided are not preserved for the estate." 5 Collier ¶ 551.02[1]; *see also Morris v. Vulcan Chem. Credit Union (In re Rubia)*, 257 B.R. 324 (B.A.P. 10th Cir. 2001), *aff'd*, 23 F. App'x 968 (10th Cir. 2001) (unpub.).

Both these sources draw on the same line of reasoning as Corbin's property-contract distinction. Acknowledging that, as was the case in *Robinson*, "transfers of land or chattels may be accompanied by contractual duties as part of the same transaction," Corbin notes the two remain analytically distinct, and "there is both a contract and a conveyance [or transfer]." 1 Corbin § 1.3. Corbin then offers this illustrative question: What if A has land to sell and B has no money but promises to pay money in the future and receives the land currently? In such a circumstance, "B comes under new relations *in rem* with all other members of ordinary society," and a property transfer is socially recognized, but

- 9 -

"[a]t the same time, B becomes bound by a special duty *in personam* to A – a duty the like of which B owes to no other person whatsoever" and sounds purely in contract. 1 Corbin § 1.3.[6]

This distinction applies with equal force here. The Habermans' contractual promise to make future loan payments to the Bank is itself neither a lien nor any other transfer of an interest in property. Indeed, had the Habermans defaulted on their loan prior to bankruptcy, the only property the Bank could've claimed (assuming a perfected security interest) was the Trans Am, and then only up to the value of the loan. Given that the Trans Am happened to be worth less than the loan balance, the Bank would've been left with a mere unsecured (if perhaps actionable) contractual promise for the difference. So, while Congress provided in Section 551 that the Trustee may take for the estate the value of the Bank's security interest in the Trans Am, the power to take "liens" and "transfers" does not also embrace a right to deprive the Bank of a separate contractual right to be repaid for its debt above and beyond the value of the security interest.

For these reasons, we believe the Trustee is mistaken when he asserts that he "becomes" the creditor upon avoidance and ascends to *all* the rights thereof.

---

[6] *See also Hafemann v. Gross*, 199 U.S. 342, 347 (1905) (distinguishing a "promise to pay," which is a "personal obligation," from a lien, which grants an interest in property and is "enforced against the land"); *Aspinall v. United States*, 984 F.2d 355, 358 (10th Cir. 1993) (noting the distinction between a "mere claim of a contractual right to be paid" and "a lien or other specifically enforceable property interest").

Instead, he receives only the bundle of rights given him by Congress in the Bankruptcy Code, and he has not directed us to any other provision of the Code that would give him post-avoidance rights beyond those of Section 551 or call into question the plain language of that provision. If the Trustee wishes greater authority, it seems to us his petition must be directed to those who make the law, not those who apply it.

III

The Trustee responds that, by allowing him only the value of the transferred security interest, we are effecting a "strip down" of the sort prohibited by the Supreme Court in *Dewsnup v. Timm*. We cannot agree.

To appreciate the Trustee's argument and our conclusion on this score, some background is required. In *Dewsnup*, a Chapter 7 petitioner sought to use 11 U.S.C. § 506 to avoid a portion of a creditor's lien on her real property. *Dewsnup*, 502 U.S. at 413. The petitioner owed approximately $120,000 to the creditor, and the real property the debt encumbered was worth only $39,000. *Id.* The debtor argued that the bankruptcy court should use Section 506(a) and (d)[7] to

---

[7] The pertinent subdivisions of Section 506 read as follows:

    (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such

(continued...)

- 11 -

strip down the value of the creditor's claim in bankruptcy to the secured portion

of the debt, equal to the value of the land, and thus void the remaining unsecured

debt.  *Id.*  The Supreme Court denied this relief.  *Id.* at 417.

In doing so, the Court focused on the language of Section 506, which

appears to allow debtors to avoid only liens that have not been "allowed and

secured."  There was no question that the lien at issue had been "allowed" under

Section 502 of the Code and thus, the Court held, could not be avoided in the

manner the debtor hoped.  *Id.* at 415.  The Court also was influenced by the fact

that it could find no clear indication in the Code that Congress had intended to

depart from the rule, embodied in pre-Code statutes and practice, that liens

generally pass through bankruptcy unaffected.  *Id.* at 417, 418-420.  Finally, the

*Dewsnup* Court proceeded to restrict its holding to the facts before it, saying it

---

[7](...continued)
creditor's interest or the amount so subject to setoff is less than the
amount of such allowed claim. Such value shall be determined in
light of the purpose of the valuation and of the proposed disposition
or use of such property, and in conjunction with any hearing on such
disposition or use or on a plan affecting such creditor's interest.

. . .

(d) To the extent that a lien secures a claim against the debtor
that is not an allowed secured claim, such lien is void, unless--

(1) such claim was disallowed only under section 502(b)(5) or
502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the
failure of any entity to file a proof of such claim under section 501 of
this title.

would "allow other facts to await their legal resolution on another day" because of "the difficulty of interpreting [Section 506] in a single opinion that would apply to all possible fact situations." *Id.* at 416-17.

Following the Supreme Court's guidance, various courts of appeals have applied *Dewsnup*'s holding to the context of Chapter 7 strip downs (and, relatedly, Chapter 7 strip offs). *See, e.g.*, *Talbert v. City Mortgage Servs. (In re Talbert)*, 344 F.3d 555, 556 n.1, 561-62 (6th Cir. 2003); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 781-83 (4th Cir. 2001). But courts generally have not extended *Dewsnup*'s restriction on strip downs to Chapters 11, 12, and 13 contexts, reasoning that to prohibit lien stripping in reorganization cases would be inconsistent with pre-Code law, with key statutory provisions and principles applicable in the reorganization chapters, and with *Dewsnup*'s own admonition that it should be read narrowly. *See Wade v. Bradford*, 39 F.3d 1126, 1128-29 (10th Cir. 1994); 4 Collier ¶ 506.06[1][c].

*Dewsnup* has no application here for similar reasons. The *Dewsnup* Court, after all, carefully parsed the language of Section 506(a) and (d) of the Code, focusing on whether and to what extent a *debtor* could void an already "allowed" lien. The opinion never mentions, much less purports to interpret, the very different language of Sections 544, 551, or 101(54), the operative Code sections governing the *trustee's* powers at issue before us. Also, the question in *Dewsnup* was whether the debtor could void the creditor's lien in the first place, while the

issue here is what, *after* a trustee avoids a lien, is preserved for the estate. Where *Dewsnup* found no statutory authority entitling the debtor to strip down the creditor's lien, it is undisputed that in Section 544 Congress explicitly authorized the trustee in our case to avoid the Bank's unperfected lien. We are not concerned, therefore, with whether the lien may be removed and the creditor's rights affected—Section 544 says it can. Rather, our inquiry is what is preserved for the estate according to Section 551 after the avoidance of the lien by the trustee under Section 544. *Dewsnup*'s conclusion that the debtor could not avoid the unsecured portion of the creditor's lien simply does not speak to the question what a trustee may take for a bankruptcy estate after avoiding a lien.

Neither are we inclined to extend *Dewsnup* well outside the statutory context in which it was decided. The Supreme Court carefully limited *Dewsnup* to the situation before it and, like the BAP, we are not aware of any cases applying the decision to a trustee's avoidance powers, nor has the Trustee brought any to our attention. *See In re Haberman*, 347 B.R. at 417. We think it noteworthy, too, that the Supreme Court emphasized its decision in *Dewsnup* was guided in some measure by its belief that the Code did not mean to displace pre-Code norms absent some clear contrary direction from Congress. *See Dewsnup*, 502 U.S. at 417, 419. Applying that rule here would only serve to confirm the course we have chosen because pre-Code rules and practice provided that only "the transfer" a trustee avoided using his or her strong arm powers could be

preserved for the benefit of the estate.  *See Lewis v. Mfrs. Nat'l Bank*, 364 U.S.

603, 604 (1961) (quoting Section 70(c) of the Bankruptcy Act); *Schwartz v.*

*Moran*, 406 F. Supp. 445, 447 (D. Del. 1976) (quoting Bankruptcy Rule 611); *see*

*also* 5 Collier ¶ 551.LH.  Like the Code definition of transfer, Section 1(30) of

the Bankruptcy Act[8] defined "transfer" broadly but limited its meaning to

property interests and did not include contractual promises of future payment,

encompassing only "the giving or conveying anything of value,—anything which

has debt-paying or debt-securing power."  *Pirie v. Chi. Title & Trust Co.*, 182

U.S. 438, 443 (1901).

\* \* \*

Congress empowered the Trustee to avoid the Bank's security interest in

the Habermans' Trans Am, and to take for the bankruptcy estate the value of that

unperfected "transfer."  But Congress did not afford the Trustee the additional

---

[8]  Section 1(30) first defined "transfer" as "the sale and every other and different mode of disposing of or parting with property or the possession of property, absolutely or conditionally, as a payment, pledge, mortgage, gift, or security."  *Pirie v. Chi. Title & Trust Co.*, 182 U.S. 438, 443 (1901).  Congress later amended the definition to explicitly include

> the sale and every other and different mode, direct or indirect, of disposing of or of parting with property or with an interest therein or with the possession thereof or of fixing a lien upon property or upon an interest therein, absolutely or conditionally, voluntarily or involuntarily, by or without judicial proceedings, as a conveyance, sale, assignment, payment, pledge, mortgage, lien, encumbrance, gift, security or otherwise.

*Segal v. Rochelle*, 382 U.S. 375, 383 n.9 (1966).

power to assume all of the Bank's rights and interests with respect to the Habermans, including those that cannot fairly be described as "transfers of property interests."  For this reason, the judgment of the Bankruptcy Appellate Panel is

*Affirmed.*